**Richard K. ("Rick") SEARS,**
**Plaintiff–Appellant,**

v.

**Roy ROMER, in His Official Capacity as Governor of Colorado; Joseph A. Garcia, in His Official Capacity as Executive Director of the Department of Regulatory Agencies; and Bruce M. Douglas, in His Official Capacity as Director of the Division of Registrations, Department of Regulatory Agencies, Defendants–Appellees.**

No. 94CA1767.

Colorado Court of Appeals,
Div. V.

March 21, 1996.

Rehearing Denied May 9, 1996.

Certiorari Denied Nov. 18, 1996.

Sheila H. Meer, P.C., Sheila H. Meer, Kimberly A. Porter, Thomas F. Hassan, Denver, for Plaintiff–Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Thomas E. Callison, Assistant Attorney General, Denver, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this action seeking injunctive relief and a declaratory judgment concerning the constitutionality of various sections of the Outfitters and Guides Act, plaintiff, Richard K. Sears, appeals the trial court's summary judgment upholding the challenged statutory provisions and certain regulations issued thereunder. We affirm.

Since 1988, Sears has been registered as an outfitter with the Office of Outfitter Registration (OOR) of the Colorado Department of Regulatory Agencies. In April 1993, Sears was notified by the OOR that certain complaints, lodged against him concerning his conduct as an outfitter, warranted a disciplinary hearing. Sears commenced this action seeking to enjoin the State from enforcing the provisions of the Act.

After Sears filed this action, the State and Sears settled the disciplinary litigation, stipulating that the resolution of that matter would not affect Sears' claims here. The State did not contest Sears' standing to pursue the claims asserted.

Upon cross-motions for summary judgment, the trial court upheld the constitutionality of the statutes and regulations and declined to order injunctive relief.

I.

Section 12–55.5–101 et seq., C.R.S. (1991 Repl.Vol. 5B) constitutes the Outfitters and Guides Act. Section 12–55.5–102(5), C.R.S. (1995 Cum.Supp.) defines an "outfitter" as a person who provides, for compensation, equipment or personal services, supplies, or the like, to support another in the take or attempted take of wildlife. A "guide" is defined as an individual employed by an outfitter for the purpose of guiding, leading, or assisting any other individual to and from a given place. Section 12–55.5–102(4), C.R.S. (1991 Repl.Vol. 5B).

The Act establishes standards for the registration of outfitters and prohibits any person without such registration from acting as

an outfitter. Section 12–55.5–103, C.R.S. (1991 Repl.Vol. 5B). The Act specifies minimum age and safety preparedness requirements for guides and prohibits any person who has lost his or her registration as an outfitter from acting as a guide. Section 12–55.5–108(2), C.R.S. (1991 Repl.Vol. 5B) and § 12–55.5–108(3), C.R.S. (1995 Cum.Supp.).

In addition, after establishing the OOR within the Colorado Department of Regulatory Agencies, the Act empowers it to administer the Act and to grant, deny, and withhold outfitter registration. The Director of the OOR is granted authority to discipline registered outfitters and may, for cause, suspend or revoke registration. *See* §§ 12–55.5–102, 12–55.5–104 and 12–55.5–106, C.R.S. (1991 Repl.Vol. 5B).

The legislative declaration of the Act specifies that the intent of the General Assembly is to exercise its police power for the purpose of safeguarding the health, safety, and welfare of individuals enjoying the use of Colorado's mountains, streams, and rivers and the state's fish and game, and to register and regulate those persons who, for compensation, provide equipment or personal services for the purpose of hunting or fishing. Section 12–55.5–101, C.R.S. (1995 Cum.Supp.).

## II.

### A.

■ Section 12–55.5–106(2), C.R.S. (1995 Cum.Supp.) provides that when the agency seeks to deny, suspend, or revoke an outfitter's registration or to place a registrant on probation, a registrant who is unsuccessful in such administrative disciplinary action must pay the costs incurred in bringing and conducting such proceedings. Section 12–55.5–107(1.5), C.R.S. (1991 Repl.Vol. 5B) requires any violator of the Act to pay the costs incurred in bringing and conducting the administrative proceeding. Sears argues that these requirements violate principles of equal protection because the statutes do not provide for a reciprocal award of costs to outfitters who prevail in the proceedings. We disagree.

■ Equal protection guarantees ensure that persons similarly situated will receive like treatment under the law. *Harris v. The Ark,* 810 P.2d 226 (Colo.1991). When legislation does not classify individuals based on a suspect class, nor impinge upon a fundamental right, a court will review such legislation under a "rational basis" standard of review. *Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707 (Colo.1987).

■ Under this standard, a classification does not violate equal protection unless it is proven that the classification has no rational basis in fact or is not rationally related to a legitimate governmental purpose. *Duran v. Industrial Claim Appeals Office,* 883 P.2d 477 (Colo.1994).

■ Equal protection guarantees do not impose significant restraints upon the government's ability to legislate in areas of social or economic welfare. Challenged economic legislation, which the parties concede this to be, will be struck down only if no reasonably conceivable set of facts could establish such a rational relationship between the classification and a legitimate end of government. *Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm, supra.*

■ A statute being analyzed under the rational basis test is presumed to be constitutional and a party challenging it bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *Kibler v. State,* 718 P.2d 531 (Colo.1986).

Here, §§ 12–55.5–106(2) and 12–55.5–107(1.5) provide that an individual who is found to have violated the Act or its regulations and has been sanctioned for that violation must pay the costs incurred in bringing and conducting the disciplinary proceedings. As interpreted and imposed by the OOR, these costs include the cost of the administrative law judge and his or her legal assistant that are apparently billed by the division of administrative hearings to the OOR, the cost of a court reporter, and costs incurred by the agency in investigating the underlying complaint or allegations. Attorney fees are not included.

The state has a legitimate and substantial interest in regulating occupations that require special knowledge or skill, or that affect the public health, welfare, morals, or safety. *Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm, supra.* Hence, the state has a legitimate interest in protecting the public safety and welfare of those who venture into the potentially dangerous wilderness by regulating outfitters and guides who provide provisions and services to such persons.

The state may further its legitimate interest in safety by requiring conformity with statutes and reasonable rules and regulations. By requiring those who violate such provisions to pay for the costs incurred in enforcing those statutes and regulations, the statute discourages statutory violations and encourages settlement of meritorious claims against outfitters, thus protecting the state's financial resources. Should the agency fail to prove such disciplinary charges, it alone is responsible for the costs, not the outfitter. Thus, if the outfitter prevails, there are no "costs" for him or her to recover.

In addition, the fact that the agency can recover such costs only when it is successful encourages the agency to bring only meritorious claims, while the specter of paying costs deters alleged violators from raising frivolous claims or defenses.

■ Even if we assume that there would be some costs which the agency could recover if it is successful but which an individual prosecuted for a disciplinary matter would bear even if he or she were successful, nonreciprocal awards of costs comport with equal protection when the statute has a rational basis and is reasonably related to a legitimate governmental purpose. *See Crested Butte South Metropolitan District v. Hoffman,* 790 P.2d 327 (Colo.1990) (statute providing for nonreciprocal award of attorney fees to governmental entity seeking recovery of delinquent fees not violative of equal protection).

Here, the statute's classification comprises those whom OOR prosecutes in outfitter disciplinary actions and differentiates in the imposition of costs between those persons who have violated the Act and those who have not. This classification and the disparate treatment that persons within it receive have a rational basis in fact and are rationally related to legitimate governmental purposes. Because of that, we conclude that Sears has failed to prove, beyond a reasonable doubt, a violation of equal protection guarantees. *See Harris v. The Ark, supra.*

### B.

Sears further asserts that the absence of such cost shifting provisions from regulatory statutes concerning, for example, physicians and health care providers, proves his contention that the statute lacks a reasonable basis. However, because this argument was raised for the first time in Sears' reply brief, we decline to consider it. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

### III.

■ We also disagree with Sears' arguments that the costs imposed by the OOR in disciplinary proceedings, including the amounts apparently billed by the division of administrative hearings for the administrative law judge, the legal assistant, and the court reporter, go far beyond those items traditionally referred to as costs under § 13–16–122, et seq., C.R.S. (1987 Repl.Vol. 6A) and, hence, are unrecoverable by the state.

Section 12–55.5–106(2), in addition to imposing the "costs" of a disciplinary proceeding on an unsuccessful registrant, provides that, in such proceedings:

> The director may use an administrative law judge employed by the division of administrative hearings in the department of administration to conduct hearings....

■ When interpreting a statute, we attempt to implement the intent of the General Assembly. To discern that intent, we first look to the plain language of the statute and interpret statutory terms in accordance with their commonly accepted meanings. *American Respiratory Care Services v. Manager of Revenue,* 835 P.2d 623 (Colo. App.1992). In addition, a reviewing court should generally give deference to the construction of statutes by administrative offi-

cials charged with their enforcement. *Nicholas v. North Colorado Medical Center, Inc.,* 902 P.2d 462 (Colo.App.1995).

Here, inasmuch as the statute specifically provides for a disciplined registrant to pay the costs of the proceeding and further specifies that an administrative law judge may be employed to conduct the proceedings, the director's interpretation of the statute to include the amount apparently billed by the division of administrative hearings for the administrative law judge and his or her legal assistant as a cost of conducting the proceeding is reasonable and entitled to deference.

In addition, because the statute provides that such proceedings are to be conducted under the State Administrative Procedure Act (APA), and because § 24–4–105(13), C.R.S. (1988 Repl.Vol. 10B) of that Act requires the administrative law judge to cause the proceedings to be recorded by a reporter, the director's interpretation of the statute to include the appearance fee of the court reporter as a recoverable cost is likewise reasonable.

We note also that § 13–16–122, C.R.S. (1987 Repl.Vol. 6A), relied upon by Sears, applies to assessment of costs by a court of this state and that the applicable article of title 13 allows imposition of such costs in "civil actions." In contrast, we deal here with costs imposed in a regulatory matter under an administrative scheme that contains no reference to § 13–16–122; hence, examples of "costs" recoverable in civil actions are not determinative here. *See Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994) (in defining "motor vehicle," interpretation of one statute by reference to an unrelated statute is an unreliable means of ascertaining legislative intent).

Accordingly, we reject Sears' challenge to the director's definition of costs.

### IV.

■ Next, we reject Sears' argument that the Act violates the Colorado constitution's guarantee of equal access to the courts by requiring Sears to pursue administrative procedures and judicial review rather than granting "initial access" to district courts.

Colo. Const. art. II, § 6 provides that:

Courts of justice shall be open to every person, and a speedy remedy afforded for every person, property or character; and right and justice should be administered without sale, denial or delay.

■ This provision requires that, if a right does accrue under the law, the courts must be available to effectuate such rights. *O'Quinn v. Walt Disney Productions, Inc.,* 177 Colo. 190, 493 P.2d 344 (1972).

■ While the Colorado Constitution protects "initial access" to the courts, the supreme court has not defined this to mean, as Sears suggests, a right to forego all administrative procedures. Rather, this provision only requires some level of access to the formal judicial process, *State Farm Mutual Automobile Insurance Co. v. Broadnax,* 827 P.2d 531 (Colo.1992), and "generally, a burden on a party's right of access to the courts will be upheld so long as it is reasonable." *Firelock, Inc. v. District Court,* 776 P.2d 1090, 1096 (Colo.1989).

Consistent with this reasoning, the supreme court has held that access to the courts is satisfied when a statute entitles parties to judicial review of the merits of an administrative agency's decision that affects their substantive statutory rights. *Allison v. Industrial Claim Appeals Office,* 884 P.2d 1113 (Colo.1994).

■ Such judicial review need not be a *de novo* review, and an appellate court may give deference to the findings of an administrative agency and still be in compliance with the constitutional open access guarantees. Also, so long as the claimant receives some judicial determination on the merits, the General Assembly may define the method of judicial scrutiny. *Allison v. Industrial Claim Appeals Office, supra.*

Here, the administrative procedure under the APA may be followed by judicial review on the merits upon appropriate request. *See* § 12–55.5–115, C.R.S. (1991 Repl.Vol. 5B) (court of appeals has initial jurisdiction to review all final agency actions and orders).

This provides Sears with the constitutional right to access contemplated by the constitution.

## V.

Sears argues that § 12–55.5–108(1)(c), C.R.S. (1991 Repl. Vol 5B) violates his rights to due process because it denies an outfitter registrant the opportunity to seek a stay of a cease and desist order until the merits thereof are determined in an administrative hearing. However, because Sears conceded at oral argument before us that he had never been subject to a cease and desist order, we decline to further review his contention.

## VI.

■ Next, Sears argues that the Act does not grant the director the authority to regulate "guides." Consequently, he reasons, the director cannot prevent an individual whose registration as an outfitter has been revoked from working as a guide. We disagree.

The Act is entitled "Outfitters and Guides" and the legislative declaration contained in § 12–55.5–101, C.R.S. (1995 Cum.Supp.) makes it clear that the intent of the General Assembly was to "register and regulate those persons who, for compensation, provide equipment or personal services" for hunting and fishing.

As noted, the Act defines a "guide" to mean "any individual employed for compensation by an outfitter for the purpose of guiding, leading, or assisting any other individual to and from a given place." Section 12–55.5–103, C.R.S. (1991 Repl.Vol. 5B). A guide's actions thus constitute "personal services" under § 12–55.5–101; hence, "regulation" of guides, as stated in the Act, is permissible.

Therefore, preventing an outfitter whose registration is revoked or suspended from working as a guide is permitted even if, as Sears argues, there are no provisions in the statute requiring registration of guides. Indeed, § 12–55.5–108(3), C.R.S. (1995 Cum. Supp.) specifically prohibits an outfitter whose registration has been revoked from working as a guide.

Accordingly, we conclude that the statute grants authority to regulate "guides" in the manner specified.

## VII.

■ Finally, we reject Sears' argument that the OOR exceeded the rule-making authority granted to it by the statute when it assertedly added three grounds for discipline of outfitters not otherwise contained in or implied from the Act.

■ It is generally presumed that administrative rules and regulations comport with constitutional standards and the burden is upon the party attacking such provisions to establish their invalidity beyond a reasonable doubt. *State Board of Medical Examiners v. Slonim,* 844 P.2d 1207 (Colo.App.1992).

■ Nevertheless, administrative agencies are legally bound to comply with their enabling statutes. *Big Top, Inc. v. Schooley,* 149 Colo. 116, 368 P.2d 201 (1962). A regulation which is not expressly or impliedly authorized by statute is without force and effect if it adds to, changes, modifies, or conflicts with an existing statute. *Adams v. Colorado Department of Social Services,* 824 P.2d 83 (Colo.App.1991). Conversely, a regulation which is expressly or impliedly authorized by the enabling statute will be given force and effect.

The Act vests the director with rule-making authority. Section 12–55.5–104(1)(a), C.R.S. (1991 Repl.Vol. 5B). Thus, the director may take disciplinary action against an outfitter's registration for violation of appropriate rules promulgated by the director which are consistent with the legislative mandate of the Act. Section 12–55.5–106(1)(a), C.R.S. (1991 Repl.Vol. 5B).

Here, former Outfitters & Guides Rule J2a, 4 Code Colo. Reg. 733–1 provided that disciplinary action could be imposed on an outfitter who consistently and intentionally failed to perform promised obligations. This rule is consistent with the statutory prohibition against misrepresentation of services contained in § 12–55.5–106(1)(f), C.R.S. (1991 Repl.Vol. 5B).

Former Outfitters & Guides Rule J2b, 4 Code Colo. Reg. 733–1 required an outfitter to provide a client with a written contract within 30 days of the receipt and acceptance of a deposit from a client. That provision is consistent with the requirement in § 12–55.5–109(1), C.R.S. (1995 Cum.Supp.) that a written contract be provided prior to the provision of services.

Former Outfitter & Guides Rule J2c, 4 Code Colo. Reg. 733–1 required an outfitter to disclose any material condition in his or her written agreement, which is consistent with the requirements concerning the contents of written contracts found in § 12–55.5–109(1).

Accordingly, because we conclude that the rules cited by Sears elaborate upon statutory matters contained in the Act and thus, are either expressly or impliedly authorized by the enabling legislation, the rules were properly promulgated and do not add to, change, modify, or conflict with the Act. Furthermore, because these rules do not constitute "agency legislation," they are constitutional. *See Colorado Ass'n of Public Employees v. Lamm,* 677 P.2d 1350 (Colo.1984).

Because of our disposition of these issues, we need not address Sears' request for attorney fees.

The judgment is affirmed.

TAUBMAN, J., concurs.

ROTHENBERG, J., concurs in part and dissents in part.

Judge ROTHENBERG concurring in part and dissenting in part.

Two provisions of the Outfitters and Guides Act (Act) provide that registrants like Sears who lose an administrative proceeding "pay for the costs incurred in bringing and *conducting* such administrative proceedings." Section 12–55.5–107(1.5), C.R.S. (1991 Repl. Vol 5B); § 12–55.5–106(2), C.R.S. (1995 Cum.Supp.) (emphasis added).

At issue here is whether the costs of "conducting" a disciplinary proceeding under the Act include the actual cost of the Administrative Law Judge (ALJ) and of the ALJ's legal assistant. Because I conclude that they do

not and that the Office of Outfitter Registration (OOR) director erred in interpreting the statutory language otherwise, I respectfully dissent. I concur with the majority's disposition of all other issues.

In construing a statute, our central purpose is to ascertain and give effect to the intent of the legislature. A statute must be read and considered as a whole and should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts. *McCarty v. People,* 874 P.2d 394 (Colo.1994).

Neither the Act nor the rules and regulations of the OOR offer any specific definition of the costs of conducting a disciplinary proceeding. And, on this record, it is not at all clear on what basis the director defined costs under the statute. In my view, construction must be guided by § 13–16–122, C.R.S. (1987 Repl.Vol. 6A).

The idea of charging costs to a losing party in a civil or administrative action is not new. Section 13–16–122 describes items includable as costs in civil actions, but its list of chargeable items does not include the *pro rata* salary of judges and their legal assistants. However, the enumeration of certain items in the statute is not meant to be exhaustive, *Cherry Creek School District No. 5 v. Voelker,* 859 P.2d 805 (Colo.1993), and merely because the actual costs of hiring an ALJ and assistant are not mentioned in the statute does not preclude the director from seeking to recover those costs from losing parties. Nevertheless, the statutory scheme of § 13–16–122 convinces me that the General Assembly did not intend for such costs to be awarded.

Section 13–16–122 enumerates costs that generally fall into two categories: (1) those incidental to litigation such as witness fees, copying fees, deposition costs, and certain attorney fees when authorized by statute or court rule; and (2) those arising from the structural costs of maintaining a judicial system such as docket fees, court reporter fees, and designated jury fees including the cost of the jurors' meals during deliberations.

I am unaware of any decisional law that has expanded the definition of costs to include the *pro rata* costs of maintaining the

courthouse building, its staff, and the judge's salary. *See* § 13–32–101, C.R.S. (1995 Cum. Supp.) (flat docket fees much lower than the actual costs of running the judicial system). For example, while losing parties have been assessed designated jury fees, they are not assessed the actual costs of reimbursing or sequestering the jury. *See* §§ 13–71–126, 13–71–129, 13–71–144, and 13–71–145, C.R.S. (1995 Cum.Supp.) (authorizing reimbursement of $50 per day per juror and authorizing court to pay sequestration expenses).

This is because a smooth-running and accessible judicial system is an integral part of our society from which everyone benefits. Since everyone benefits from the rule of law, everyone contributes to its operation. This is the legislative intent behind the cost statute.

In the case of regulatory agencies, the director of the Department of Regulatory Agencies has the power to institute uniform cost charging policies for disciplinary proceedings involving licensees. Section 24–34–103, C.R.S. (1988 Repl.Vol. 10A). However, § 24–34–105(2)(b), C.R.S. (1995 Cum.Supp.) directs each board or commission to "adjust its fees so that the revenue generated from said fees approximates its direct and indirect costs." This strongly suggests that all licensees should contribute equally to the funding of their respective regulatory agencies through the payment of licensing fees. This funding by all licensees should pay the costs of the factfinder at a disciplinary hearing.

Nor am I persuaded by the fact that statutes applicable to two other agencies also may be construed to sanction a similar approach to costs. *See* § 12–8–127(3), C.R.S. (1991 Repl.Vol.) (Barbers and Cosmetologists Act contains same fee provision as Outfitters and Guides Act); § 12–43–204(3.5), C.R.S. (1995 Cum. Supp) (Mental Health Act requires unlicensed psychotherapists to pay a fee reflecting the direct and *indirect* costs of grievance activities). No previous Colorado appellate decisions have approved the expansion of costs that has occurred here and most, if not all, other agencies apparently have followed the general rule that they should fund their prosecutorial functions from their licensing and registration fees.

*See* § 24–34–105, C.R.S. (1988 Repl.Vol. 10A).

I also am concerned about the arbitrariness of assessing such items as costs. Here, the record reflects that the OOR has collected similar costs in two previous cases. In one case, the actual cost of the ALJ and legal assistant was $148. In the other, however, it was $2279.75. This wide disparity suggests that the complexity of the case and the existence of evidentiary issues govern the amount assessed, rather than the gravity of the offense. Ironically, blatant violators with clearcut violations likely would pay the least in costs, whereas those outfitters whose cases are close or complex could be assessed large bills for time and research by the judge and the judge's assistant or clerk. Imposing costs in such a manner thus seems arbitrary and capricious.

Therefore, I would hold that the OOR director's interpretation of costs under the Outfitter Registration statute must be guided by § 13–16–122. Applying that standard, I conclude that the director erred in imposing upon Sears the actual costs of employing the ALJ and assistant because it is tantamount to impermissibly charging him with the structural costs of maintaining the administrative judiciary.

Given my conclusion that the Outfitter Registration costs statute has been erroneously applied by the agency, I do not address Sears' additional contention that the practice of charging the actual costs of hiring an ALJ and assistant violates his right to equal protection.