**PARAGUAY PLACE–VIEW TRUST,**
Plaintiff–Appellant,

v.

**Albert W. GRAY and Jackie R. Gray,**
Defendants–Appellees.

No. 98CA0894.

Colorado Court of Appeals,
Div. A.

May 13, 1999.

Paul A. Frederiksen, Parker, Colorado, for Plaintiff–Appellant.

Zak, Fox and Pehr, P.C., David W. Pehr, Westminster, Colorado, for Defendants–Appellees.

Opinion by Judge CASEBOLT.

Plaintiff, Paraguay Place–View Trust, appeals the judgment dismissing its forcible entry and detainer (FED) action against defendants, Albert W. and Jackie R. Gray. We reverse and remand.

The facts are not in dispute. In 1994, defendants entered into possession of a residence as the purchasers pursuant to the terms of an installment land contract with plaintiff's predecessor in interest. In 1997, defendants failed to make the payments due under the contract. As a result, plaintiff commenced this FED action in county court to obtain possession of the residence.

Defendants filed an answer asserting an ownership interest in the property and arguing that plaintiff's remedy for any default was through foreclosure rather than a FED action. Defendants also requested removal of the case to the district court.

Following a transfer of the case, the district court conducted a hearing. After concluding that § 38–38–305, C.R.S.1998, required plaintiff to foreclose as a matter of law, the court dismissed the complaint.

Plaintiff contends the trial court erred in concluding that § 38–38–305 required foreclosure as a matter of law. We agree.

Section 13–40–104(1)(i), C.R.S.1998, of the FED statute provides that an unlawful detention occurs "when a vendee having obtained possession under an agreement to purchase lands or tenements, and having failed to comply with his agreement, withholds possession thereof from his vendor, or assigns, after demand therefor is duly made."

Historically, Colorado courts have allowed vendors under installment land contracts, in some instances, to recover possession of real property by a FED action under this statute. See Grombone v. Krekel, 754 P.2d 777 (Colo. App.1988); Wu v. Good, 720 P.2d 1005 (Colo. App.1986).

However, in other cases, our courts have required that an installment land contract be treated as a mortgage so that the defaulting vendee has the additional protections similar to those afforded in a foreclosure proceeding, such as redemption rights. See Flett v. Turgeon, 699 P.2d 10 (Colo.App.1984)(an equitable right of redemption has been recognized as a permissible (although not the exclusive) remedy in cases in which the installment land contract purchaser has acquired an equitable interest in the property, if the purchaser has substantially performed under the contract).

In deciding whether an installment land contract should be treated as a mortgage, various factors are considered, including the amount of the vendee's equity in the property and the length of the default period. Courts have also considered the willfulness of

the default, whether the vendee made any improvements to the real property, and whether the property has been adequately maintained. *See Grombone v. Krekel, supra; Woods v. Monticello Development Co.*, 656 P.2d 1324 (Colo.App.1982).

Article 38 of Title 38 of the Colorado Revised Statutes governs the foreclosure of debts secured by real estate. Part 3 of Article 38 governs redemption. In 1990, the General Assembly enacted § 38–38–305, C.R.S.1998, within part 3, which provides, in relevant part that:

> (2) For the purposes of this article, an installment land contract vendor of property shall be considered as a lienor for the unpaid portion of the purchase price, interest, and other amounts provided under the installment land contract and shall be subject to all requirements in this article with respect to lienors; but such installment land contract vendor shall not be considered as an owner as to any portion of such property.

> (3) For the purposes of this article, an installment land contract vendee of property shall be considered as an owner except as to any portion of such property that such vendee may thereafter have transferred, as evidenced by a recorded instrument, and such vendee shall be subject to all requirements in this article with respect to owners.

■ Interpretation of statutes is a question of law, and a reviewing court need not defer to a trial court's interpretation. *Colorado Division of Employment & Training v. Parkview Episcopal Hospital*, 725 P.2d 787 (Colo.1986).

■ When interpreting a statute, we attempt to implement the intent of the General Assembly. To discern that intent, we look first to the plain language of the statute and interpret statutory terms in accordance with their commonly accepted meanings. *Sears v. Romer*, 928 P.2d 745 (Colo.App.1996). A strained or forced construction of a statutory term is to be avoided, and we must look to the context in which a statutory term is employed. *Miller v. Byrne*, 916 P.2d 566 (Colo.App.1995). Further, we must choose a

construction that serves the purpose of the legislative scheme. *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991).

The quoted sections do not, under a plain language and contextual analysis, require an installment land contract vendor to foreclose upon default as a matter of law. Instead, they describe when certain redemption rights and rights to cure a default exist. We so conclude for a number of reasons.

The quoted sections do not describe who may or must *foreclose.* Such · foreclosure provisions are specifically contained, *inter alia,* in § 38–38–101, C.R.S.1998 (owner of an evidence of debt which is secured by a deed of trust containing a power of sale may foreclose upon default). Rather, the quoted sections are contained in part 3 of article 38, the provisions of which deal with *redemption* from foreclosure sales.

■ The language of § 38–38–305(2), C.R.S.1998, makes an installment land contract vendor a lienor and grants such vendor a lien for the unpaid portion of the purchase price. The import of this language is to give the contract vendor the *redemption* rights that a lienor has under part 3 of article 38 when, for example, a senior deed of trust encumbering the real estate sold under the installment contract is foreclosed. Similarly, § 38–38–305(3), C.R.S.1998, designates an installment land contract vendee an owner. The plain meaning of this language is to give the vendee the preferential *redemption* rights that a title owner has under part 3 of article 38, again, for example, as. when a senior deed of trust is foreclosed.

■ These provisions, added by the General Assembly in 1990, simply codify previously existing equitable rights of redemption that were recognized to exist by courts of equity. *See Flett v. Turgeon, supra* (no statutory redemption provision for installment land contracts then existed in Colorado; however, an equitable right of redemption is recognized); *see also* G. Palcanis & J. Smittkamp, *Foreclosure of Deeds of Trust and Mortgages: 1990 Statutory Amendments– Part I*, 19 Colo. Law. 1601 (August 1990) (ad hoc committee that drafted 1990 amendments to foreclosure statutes "endeavored to

eliminate traps for the unwary and to codify relevant case law and common foreclosure practices and procedures that have developed in public trustee offices but which were not required by statute").

This interpretation is also supported by review of other statutory provisions governing foreclosure sales and the context in which the quoted sections are placed.

For example, § 38–38–103(1), C.R.S.1998, requires a public trustee or sheriff to mail certain notices to any person having "a right to *redeem* the property subject to foreclosure under section ... 38–38–305 ...." (emphasis added) This provision makes it clear that § 38–38–305 deals with *redemption* rights.

Section § 38–38–104, C.R.S.1998, grants a lienor or vendee of the property a right to cure a default whenever the default in the terms of the evidence of debt and deed of trust or mortgage being foreclosed is non-payment. And, § 38–38–103(1), C.R.S.1998, requires that notice of the foreclosure be sent to "any person having a right to cure a default under section 38–38–104...." The effect of this provision is specifically to grant a right to cure a default in a senior deed of trust or mortgage not only to "title owners" under subsequent deeds, but also to subsequent vendors and vendees under installment land sale contracts, and to give such persons notice of their rights. *See also* 2 C. Krendl, *Colorado Methods of Practice* § 68.16 (4th ed.1998).

Under § 38–38–302, C.R.S.1998, as pertinent here, the "owner of the property or any other person liable after the foreclosure sale for the deficiency" may redeem within seventy-five days following the foreclosure sale. By virtue of the designation in § 38–38–305(3), an installment land contract vendee is considered an owner. *See* 2 C. Krendl, *supra*, at § 68.2. Hence, such person would be entitled to redeem within that designated period.

Under § 38–38–303, C.R.S.1998, if the owner or person liable for the deficiency chooses not to redeem, the lienor having the senior lien may redeem within ten days following expiration of the seventy-five day period specified in § 38–38–302, and junior lien-

ors have five-day periods following thereafter to themselves redeem.

Under § 38–38–305, an installment land contract vendor is designated as a lienor "for the unpaid portion of the purchase price, interest, and other amounts provided under the installment land contract." *See* 2 C. Krendl, *supra*, at § 68.21 ("each of the following persons may *redeem* as a lienor and shall be treated as a lienor *for redemption purposes:* ... installment land contract vendor on property being foreclosed as to the unpaid portion of the purchase price, interest, and other amounts provided under the contract" (emphasis added)). Such a lienor now has the statutory right to redeem the property if a superior deed of trust, mortgage, or lien is foreclosed.

In addition, § 38–38–305(2) itself also provides: "but such installment land contract vendor shall not be considered as an owner as to any portion of such property." This language makes it clear that an installment land contract vendor does not have the preferential rights that an owner of property has to redeem. This additional language is surplusage and makes no sense· if, as defendant asserts, the statute applies to require a contract vendor to foreclose as a matter of law once default has occurred.

The interpretation urged by defendant would effect a sweeping change in the way installment land contracts have been historically treated. As previously noted, installment land contract vendors have been allowed, in many instances, to recover possession of real property by a FED action, depending upon the circumstances. *See Grombone v. Krekel, supra.* Under the interpretation urged by defendant and adopted by the trial court, the considerations identified as pertinent to this inquiry are irrelevant.

Moreover, under defendant's interpretation, an installment land contract vendor would have to file an expensive judicial foreclosure proceeding to oust contract purchasers regardless of the factors historically recognized by courts as controlling this determination. The relatively cheaper process of foreclosure through the public trustee would not be available to vendors because

public trustees are authorized to act only when there is a power of sale contained in a deed of trust. *See* § 38–37–105, C.R.S.1998; § 38–38–101, et seq., C.R.S.1998. Clearly, an installment land contract would not ordinarily contain such a grant to the public trustee or be recognized as a "deed of trust" within the meaning of the statute.

We find no indication in the statutory language, or in its legislative history, which would indicate that the General Assembly contemplated such a sweeping change. Moreover, to the extent that the statute might be deemed ambiguous, we note that there was no discussion of installment land contracts during the legislative committee hearings. *See* Hearings on S.B. 90–109 before the Senate Local Government Committee, 57th General Assembly, Second Session (Feb. 7, 1990).

Furthermore, members of an *ad hoc* committee who drafted portions of the 1990 amendments to article 38 make no reference to such a possible interpretation. *See* G. Palcanis & J. Smittkamp, *supra;* G. Palcanis & J. Smittkamp, *Foreclosure of Deeds of Trust and Mortgages: 1990 Statutory Amendments–Part II*, 19 Colo. Law. 1843 (September 1990). Nor, notably, do any other authorities on the subject. *See generally* 2 C. Krendl, *supra,* at § 68.01, et seq.

Indeed, the defendant's interpretation would, contrary to public policy, significantly reduce the use of installment land contracts in Colorado.

Installment land contracts offer several advantages for both vendors and purchasers when compared with traditional mortgage financing by a third-party lender. When a vendor can enforce the contract's forfeiture clause, the vendor can expect to recover the property quickly upon a default, need not incur the costs and delay of foreclosure, and can retain all payments made by the purchaser. Because of these advantages, a vendor may often be willing to lend a larger portion of the property's value and to accept a smaller down payment from the purchaser. The vendor may also be willing to sell to a purchaser who lacks the income or credit rating to satisfy mortgage lenders. R. Powell & P. Rohan, 15 *Powell on Real Property* § 84D.01[2] (1998).

Purchasers can also benefit from a low down payment and the opportunity to buy without satisfying mortgage credit requirements. Further, a purchaser's closing costs can decline significantly and the purchaser can obtain possession of the property more readily, without waiting for a mortgagee's approval of appraisals and inspections. R. Powell & P. Rohan, *supra.*

These benefits would no longer be available and the policies surrounding such benefits would be frustrated under defendant's interpretation; they are effectuated under the interpretation we adopt.

Finally, under our interpretation, § 38–38–305 does not conflict with the specific right to bring a FED action granted in § 13–40–104, C.R.S.1998. And, we find it significant that, when it adopted the provisions in issue in 1990, the General Assembly made no changes to § 13–40–104(1)(i), a statute specifically describing, as an unlawful detention, the failure to comply with the terms of an installment land contract.

Hence, we need not resort to other rules of statutory interpretation such as determining which statute is more specific or adopted later in time.

 This does not mean, however, that the provisions of § 38–38–305 have no application whatsoever when there is a default in an installment land contract. Rather, when, as here, a default occurs in an installment land contract and the vendor seeks to obtain possession, the vendor may initiate a FED action. Thereafter, a court may, upon appropriate request and using the factors discussed in *Woods v. Monticello Development Co., supra,* determine whether the vendor can proceed by way of FED action or, instead, must proceed by way of foreclosure. In the event the court requires foreclosure, the vendor must foreclose under the statutory terms of article 38 and, under § 38–38–305, the vendee has a right to cure and a right of redemption to be exercised in the manner set forth in the statute. If the court does not require foreclosure, the vendor may proceed by way of FED action.

This holding harmonizes our interpretation with § 38-38-701, C.R.S.1998, which makes article 38 applicable to proceedings to foreclose not only deeds of trust but "proceedings and actions for enforcement or foreclosure of any other types of liens upon real property."

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge MARQUEZ concurs.

Judge RULAND dissents.

Judge RULAND dissenting.

Because I believe the majority's interpretation violates the plain meaning of the 1990 amendments to the foreclosure statutes, I respectfully dissent. *See* Colo. Sess. Laws 1990, ch. 275, § 38-38-101, et seq., at 1653.

To begin, the majority fails to address the specific language of § 38-38-701, C.R.S.1998, which defines the scope and application of article 38. As pertinent here, that section provides:

(1) Except as otherwise provided for in subsection (2) of this section [not applicable here], the provisions of *this article* shall apply:

(a) To proceedings for the foreclosure of deeds of trust through the public trustee . . . and

(b) *In the case of proceedings and actions for enforcement or foreclosure of any other types of liens upon real property* and in the case of sales by virtue of execution and levy, where the particular proceeding or action under which the sale is performed is commenced on or after October 1, 1990 . . . . (emphasis supplied)

It is undisputed that the seller in an installment land contract retains a lien against the subject property to be enforced in the event of default by the purchaser. Hence, the applicable provisions of article 38 apply to land installment contracts.

Contrary to the majority's view, this interpretation is confirmed in the plain language of § 38-38-305, C.R.S.1998. While this provision is contained in part 3 which is captioned "Redemption," the language of the provision is not so restricted. Section 38-38-305(2), C.R.S.1998, provides:

For the purposes of *this article*, an installment land contract vendor of property shall be considered as a lienor for the unpaid portion of the purchase price, . . . and shall be subject to all requirements *in this article* with respect to lienors; but such installment land contract vendor shall not be considered as an owner as to any portion of such property. (emphasis supplied)

While the title given to a statute can be an aid in statutory construction, it does not control the plain language of the text. *See Cooper v. First Interstate Bank,* 756 P.2d 1017 (Colo.App.1988). And here, by its express language this provision applies to article 38 and not just the redemptive rights under Part III.

To the extent the provisions of article 38 conflict with the Forcible Entry and Detainer statute, § 13-40-104(1)(i), C.R.S.1998, under fundamental rules of statutory construction, the later 1990 provisions of the foreclosure act control. *See Gorman v. Tucker,* 961 P.2d 1126 (Colo.1998) (to the extent that there is a conflict between two statutes, the last in time controls); § 2-4-206, C.R.S.1998.

I also disagree with the majority's conclusion that the changes in the treatment of land installment contracts required by the express language of the statutes leads to undesirable results. First, the uniform treatment of purchasers under land installment contracts with mortgagers and borrowers under deeds of trust eliminates any guess-work as to when a foreclosure proceeding may or may not be required, thus incorporating the elements of fairness in each type of transaction. Conversely, the burden is not placed upon the purchaser under an installment contract to file expensive and protracted litigation in order to enforce rights given to mortgagors or other borrowers by the foreclosure statutes. In the same manner, in an economic setting where real estate values increase dramatically on an annual basis, a purchaser is not deprived of his or her equity position simply because finan-

cial resources are not available to retain counsel and file litigation.

Finally, I am unable to conceive why the General Assembly would conclude to grant a statutory right of cure to mortgagors and borrowers under a deed of trust for non-payment of money, but deny that same right to purchasers under land installment contracts. If, as the majority implies, this type of transaction is designed for those with fewer resources, the grant of that right takes on even greater importance.

Accordingly, because I fully agree with the trial court's interpretation of the applicable statutes, I would affirm its judgment.