**Rosemary McCOOL, Director of the Division of Registrations, in her official capacity, on behalf of the Office of Outfitters Registration, Department of Regulatory Agencies, State of Colorado, Petitioner–Appellee,**

v.

**Richard K. SEARS, Respondent–Appellant.**

**No. 06CA1922.**

Colorado Court of Appeals,
Div. III.

May 1, 2008.

See also 928 P.2d 745.

John W. Suthers, Attorney General, Kris A. Gomez, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

Sheila H. Meer, P.C., Sheila H. Meer, Diana R.M. Schatz, Kimberly A. Porter, Denver, Colorado, for Respondent–Appellant.

## ORDER SET ASIDE IN PART

Opinion by Judge LOEB.

Respondent, Richard K. Sears, appeals from portions of the August 2006 cease and desist order issued by the Director of the Division of Registrations on behalf of the Office of Outfitters Registration. We set aside the challenged portions of the order.

## I.  Background

In January 1990, the Director issued a final agency order (1990 order) finding that Sears violated the Outfitters and Guides Act (Act), title 12, article 55.5, C.R.S.2007, suspending his registration to outfit for two months, and placing him on probation.

Four years later, the Director issued another final agency order (1994 order) finding that Sears violated the 1990 order, suspending his outfitters registration for three years, fining him $12,000, and placing him on probation. Various issues regarding the 1994 order were the subject of two prior appeals by Sears to this court. See Sears v. Romer, 928 P.2d 745 (Colo.App.1996) (Sears I); Douglas v. Sears, (Colo.App. No. 95CA1930, Oct. 24, 1996)(not published pursuant to C.A.R. 35(f) ).

In 1995, the Director received complaints concerning Sears's provision of outfitting services. After proceedings before an administrative law judge (ALJ), the Director issued a final agency order (1995 order) directing Sears to surrender his outfitters registration, prohibiting him from acting as an outfitter or providing outfitting services, and ordering him to pay the costs of the administrative proceeding.

In 2003, Sears applied for reinstatement of his outfitters registration. The Director denied his application and issued a cease and desist order prohibiting him from engaging in the practice of outfitting without a valid registration. Sears requested a hearing on the matter, and an ALJ was appointed to preside over the proceedings.

The parties submitted the case to the ALJ on stipulated facts. They agreed that Sears contracted with registered outfitters to provide booking agent services in which he solicited hunters via print and Internet advertisements for hunts conducted by the registered outfitters. They also stipulated that Sears solicited and authorized individuals to hunt, fish, or take wildlife on land he leased. There was no stipulation that Sears was acting as an outfitter or engaging in outfitting services.

Both parties filed motions for summary judgment, and, in November 2004, the ALJ granted the Director's motion. The ALJ determined that the Director's cease and desist order against Sears was properly issued.

In August 2006, the Director issued its final agency order (2006 order) in which it adopted the stipulated facts submitted to the ALJ by the parties. The order instructed Sears to, inter alia, cease and desist from engaging in the following activities:

- Soliciting to provide or providing, for compensation, outfitting services for the purpose of hunting and fishing. "Soliciting" under the order includes acting as a booking agent or hunter referral source for Colorado outfitters, including advertising by print media, word-of-mouth, and Internet website for himself or others.

- Soliciting persons to hunt, fish, or take wildlife on property he rents or leases, including without limitation, providing such authorization for compensation.

- Any activity that violates § 12–55.5–103(1), C.R.S.2007 (such as engaging in activities as an outfitter or representing himself as an outfitter), unless and until he obtains an active outfitter registration in the State of Colorado.

Sears appeals from this order.

## II.  Standard of Review

A reviewing court may reverse an administrative agency's action if, inter alia, the court

determines the action was not supported by substantial evidence in the record, the agency erroneously interpreted the law, or the agency exceeded its constitutional or statutory authority. § 24–4–106(7), C.R.S.2007; *Ohlson v. Weil,* 953 P.2d 939, 941 (Colo.App. 1997).

The interpretation of statutes and the constitution is a question of law we review de novo. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005). However, an agency's interpretation of a statute within its expertise is entitled to deference if the statute's plain language is subject to different reasonable interpretations. *See Jefferson County Bd. of County Comm'rs v. S.T. Spano Greenhouses, Inc.,* 155 P.3d 422, 425 (Colo.App.2006); *Snyder v. Colo. Podiatry Bd.,* 100 P.3d 496, 499 (Colo.App.2004).

In construing a statute, our primary duty is to give effect to the intent of the General Assembly, which we do by looking to the plain language of the statute. *Upper Gunnison River Water Conservancy Dist.,* 109 P.3d at 593. We must give effect to each statutory word and construe the statute as a whole, giving its terms consistent, harmonious, and sensible effect, while avoiding an illogical or absurd result. *Id.; Holcomb v. Jan–Pro Cleaning Sys.,* 172 P.3d 888, 894–95 (Colo. 2007).

### III. Booking Agents as Outfitters

■ Sears first contends the Director misinterpreted the Act by determining that he must cease and desist from acting as a booking agent for outfitters because he is not a registered outfitter. We agree.

Section 12–55.5–103(1) requires an outfitter to obtain a certificate of registration. It provides:

> No individual shall engage in activities as an outfitter or advertise in any publication or represent himself as an outfitter unless he first obtains a certificate of registration from the division and unless such certificate of registration is in full force and effect and in such individual's immediate possession. No individual shall continue to act as an outfitter if such registration has been suspended or revoked or has expired.

Section 12–55.5–102(5)and (5.5), C.R.S. 2007, define the terms "outfitter" and "outfitting services":

> (5) "Outfitter" means any individual *soliciting to provide* or providing, for compensation, *outfitting services* for the purpose of hunting or fishing on land that such individual does not own.

> (5.5) "Outfitting services" means providing transportation of individuals, equipment, supplies, or wildlife by means of vehicle, vessel, or pack animal, facilities including but not limited to tents, cabins, camp gear, food, or similar supplies, equipment, or accommodations, and guiding, leading, packing, protecting, supervising, instructing, or training persons or groups of persons in the take or attempted take of wildlife.

(Emphasis added.)

■ In ordering Sears to cease and desist from acting as a booking agent, the Director interpreted the term "soliciting" in the definition of "outfitter" in section 12–55.5–102(5) to include "acting as a booking agent ... for outfitters." Although this is a reasonable interpretation of the term "soliciting," the term "soliciting" does not stand alone in the definition. Rather, it is part of the phrase "soliciting to provide ... outfitting services." Thus, giving effect to each statutory word as we are required to do, *Holcomb,* 172 P.3d at 894–95, we conclude an outfitter is not one who simply solicits outfitting services, but one who solicits *to provide* outfitting services. Accordingly, a person who solicits on behalf of others who provide outfitting services is not an outfitter within the plain language of the statute. *See Upper Gunnison River Water Conservancy Dist.,* 109 P.3d at 593. Here, there is nothing in the record or stipulated facts indicating that Sears was soliciting to provide outfitting services himself.

This plain language interpretation is also consistent with the registration requirements for an outfitter set forth in the Act. *See id.* (court must interpret statute as a whole to give it consistent, sensible, harmonious effect). Among other requirements, section 12–55.5–105, C.R.S.2007, requires an outfitter

to obtain a valid first aid certification card, possess $100,000 of insurance coverage for bodily injury, and submit a $10,000 surety bond to the Director. These requirements logically and sensibly apply to a person who provides outfitting services. However, it would be illogical to require a booking agent—who does not provide outfitting services but only connects a hunter or fisher with an outfitter—to meet these same first aid, insurance, and surety bond requirements. *See Upper Gunnison River Water Conservancy Dist.*, 109 P.3d at 593 (court must interpret statutory provisions as a whole and avoid illogical results).

Thus, to the extent the Director ordered Sears to cease and desist from acting as a booking agent based on a determination that a booking agent is an "outfitter" within the definition of section 12–55.5–102(5), we conclude that the Director erred, and we set aside that portion of the order. *See* § 24–4–106(7) (reviewing court shall set aside unlawful agency action).

## IV. Rulemaking Authority of Director

■ Sears also contends the Director exceeded her statutory grant of authority by promulgating rules that regulate the booking agent activities of revoked outfitters. We agree.

■ Agency rules adopted pursuant to a statutory rulemaking proceeding are presumed valid. *Amax, Inc. v. Colo. Water Quality Control Comm'n*, 790 P.2d 879, 883 (Colo.App.1989). Accordingly, the burden is upon the challenging party to establish the rules' invalidity by demonstrating that the rulemaking body acted in an unconstitutional manner, exceeded its statutory authority, or otherwise acted in a manner contrary to statutory requirements. *Id.*

■ An agency regulation or rule may not modify or contravene an existing statute, and any regulation that is inconsistent with or contrary to a statute is void. *Cartwright v. State Bd. of Accountancy*, 796 P.2d 51, 53 (Colo.App.1990). Also, although the construction of a statute by an administrative agency charged with its enforcement should be given deference by the courts, the courts

have a duty to invalidate administrative regulations which conflict with the design of a statute. *Id.*

Section 12–55.5–104(1)(a), C.R.S.2007, establishes the Director's authority to promulgate rules. It provides:

(1) In addition to all other powers and duties conferred or imposed upon the director by this article or by any other law, the director: (a) May promulgate rules and regulations pursuant to the provisions of section 24–4–103, C.R.S., to govern the registration of outfitters to carry out the purposes of this article.

Section 12–55.5–101, C.R.S.2007, sets forth the purposes of the Act. It provides, in relevant part:

It is the intent of the general assembly to promote and encourage residents and non-residents alike to participate in the enjoyment and use of the mountains, rivers, and streams of Colorado and the state's fish and game and, to that end, in the exercise of the police power of this state for the purpose of safeguarding the health, safety, welfare, and freedom from injury or danger of such residents and nonresidents, to register and regulate those persons who, for compensation, provide equipment or personal services to such residents and nonresidents for the purpose of hunting and fishing.

Based on the statutory grant of authority in section 12–55.5–104(1)(a), the Director promulgated Rule A.4, 4 Code Colo. Regs. 733–1, which defines an "authorized booking agent" as "an individual or business entity which has entered into a contractual relationship with an outfitter . . . to solicit outfitting services on behalf of an outfitter." The Director also promulgated Rule D.17, which provides:

An outfitter shall not employ or contract with any individual whose outfitter registration is currently under revocation or active suspension to:

a) provide guide services as defined in section 12–55.5–102(4), C.R.S.;

b) provide outfitting services as defined in section 12–55.5–102(5.5), C.R.S.;

c) act, behave like, pose as, impersonate, appear or seem to be, or function as a substitute for the outfitter; or

d) represent, stand for, symbolize, serve as the official and authorized delegate or agent for, act as a spokesman for, or act the part or role of the outfitter.

Sears contends that, by applying Rule D. 17(c) and (d) to block his right to solicit hunters or anglers as a booking agent for registered outfitters, the Director is "attempting to prohibit by rule what is not prohibited by law." We agree.

As discussed above, the term "authorized booking agent" does not appear anywhere in the Act, and the Act itself does not purport to prevent a revoked outfitter from acting as a booking agent for registered outfitters, as long as the revoked outfitter has not acted as an outfitter or contracted to perform "outfitting services ." Nothing in the record here indicates that Sears was acting as an outfitter or performing outfitting services, as those terms are defined in section 12.55.5–102(5) and (5.5).

We reject the Director's argument that the statutory grant of authority to promulgate rules "to govern the registration of outfitters to carry out the purposes of this article," § 12–55.5–104(1)(a), coupled with the Act's stated purpose of protecting the health, safety, and welfare of hunters and fishermen by registering and regulating persons who provide equipment and personal services for the purpose of hunting or fishing, authorizes the Director to promulgate rules governing revoked outfitters when they are engaged solely in booking agent activities. Contrary to the Director's argument, in our view, the term "personal services" referred to in the Act's statement of purpose relates to providing "outfitting services," as defined in section 12–55.5–102(5.5), and does not include providing booking agent services to registered outfitters. *See Sears I*, 928 P.2d at 749 (under the Act, the state "has a legitimate interest in protecting the public safety and welfare of those who venture into the potentially dangerous wilderness by regulating outfitters and guides who provide provisions and services to such persons").

Moreover, the Director's reliance on *Sears I* to support her arguments here is misplaced. In *Sears I,* a division of this court held that the Director had the authority to prevent a revoked outfitter from working as a guide even though no provision in the Act required the registration of guides. However, the division noted that the Act specifically contains a definition of the term "guide," section 12–55.5–102(4), C.R.S.2007, and also expressly prohibits an outfitter whose registration has been revoked from working as a guide, section 12–55.5–103.5(2), C.R.S.2007. Here, by contrast, the Act does not use or define the term "booking agent," and nothing in the Act itself purports to regulate the activities of booking agents.

In *Cartwright,* relied upon by Sears, the enabling statute at issue there gave the accountancy board authority to make rules necessary for the administration of the article. The article regulated financial audits but did not govern financial "reviews," and the article further provided that non-accountants were not prohibited from performing services requiring accounting skills if the services did not include investigation, examination, or auditing. A division of this court concluded that the accountancy board exceeded its authority in promulgating rules that prohibited non-accountants from performing reviews. In so concluding, the division reasoned as follows:

> If, as the Board contends, public policy requires that only licensed accountants be permitted to perform the review function, only the General Assembly has the power to so provide; it has not done so, and the Board's attempt to accomplish this result by regulatory fiat is invalid.

*Cartwright,* 796 P.2d at 54.

We find the division's reasoning persuasive and applicable here. Whether it is sound public policy to prevent revoked outfitters from acting as booking agents is a matter for the General Assembly. However, the General Assembly has not so provided in the Act, and the Director's rules to accomplish that result are, thus, beyond the scope of the Act.

Accordingly, we conclude the Director exceeded her statutory authority in promulgating Rule D.17 to the extent it regulates the activities of revoked outfitters acting as

booking agents for registered outfitters. Insofar as the order, based on the stipulated facts, prohibits Sears from engaging in such activities, the order must be set aside.

Because of our resolution of this issue, we need not address Sears's further contention that Rule D. 17(c) and (d) constitute an unconstitutional prior restraint on his commercial speech.

## V. Solicitation by Leaseholders

■ Sears further contends the Director misinterpreted section 12–55.5–102.5, C.R.S. 2007, by ordering him to cease and desist from soliciting persons to hunt, fish, or take wildlife on land he leases. We agree and set aside this portion of the Director's order as well.

Section 12–55.5–102.5 provides: "This article shall not apply to a person who *only authorizes* a person to hunt, fish, or take wildlife on property the person owns, rents, or leases, including, without limitation, providing such authorization for compensation." (Emphasis added.)

As plainly and unambiguously stated in this provision, the Act does not apply to those leaseholders who "only authorize" hunting on land they lease. Thus, the Director correctly determined that leaseholders who do more than "only authorize" hunting and fishing on land they lease are not necessarily exempt from the Act under section 12–55.5–102.5. *See Upper Gunnison River Water Conservancy Dist.,* 109 P.3d at 593 (court should construe statute as written).

However, section 12–55.5–102.5 is not an affirmative grant of regulatory power or a proscription of specific activity. Thus, the Director's order instructing Sears to cease and desist from "soliciting" persons to hunt, fish, or take wildlife on land he leases must derive instead from a different statutory provision or rule. Accordingly, we look to other statutory provisions to support this portion of the Director's order.

As noted, section 12–55.5–103(1) requires an outfitter to obtain a certificate of registration before he or she may "engage in activities as an outfitter or advertise in any publication or represent himself as an outfitter."

Thus, section 12–55.5–103(1)'s prohibition against acting as an outfitter without a valid certificate of registration could conceivably justify this portion of the Director's cease and desist order. However, as discussed above, the definition of "outfitter" in section 12–55.5–102(5) makes clear that an outfitter is one who "solicit[s] *to provide* ... outfitting services" (emphasis added). And, as also discussed above, outfitting services as defined in section 12–55.5–102(5.5) involve more than merely authorizing or soliciting hunting or fishing. Hence, contrary to the Director's suggestion, an outfitter is not one who simply solicits the availability of hunting or fishing opportunities without suggesting he or she will provide outfitting services.

Here, Sears stipulated that he "solicited" and authorized hunting on land he leased. Thus, under the plain language of section 12–55.5–102.5, he is not exempt from the Act, as found by the Director. *See Upper Gunnison River Water Conservancy Dist.,* 109 P.3d at 593. However, the stipulated facts do not indicate that Sears "solicit[ed] *to provide* outfitting services" on his leased land, such that he would be an "outfitter" under section 12–55.5–102(5) (emphasis added). Accordingly, we set aside the portion of the Director's cease and desist order requiring Sears to stop soliciting persons to hunt or fish on land he leases.

Those portions of the Director's order directing that Sears cease and desist from acting as a booking agent or hunter referral source for registered outfitters and from soliciting persons to hunt or fish on land he leases are set aside.

Judge TAUBMAN concurs.

Judge HAWTHORNE concurs in part and dissents in part.

Judge HAWTHORNE concurring in part and dissenting in part.

I concur with part V of the majority opinion, holding that the Director misinterpreted section 12–55.5–102.5, C.R.S.2007, concerning the application of the Act to those who "only authorize" hunting or fishing on their land. However, I respectfully dissent from part IV,

which holds that the Director exceeded her statutory rulemaking authority by promulgating rules that regulate the booking agent activities of revoked outfitters.

As noted by the majority, agency rules adopted pursuant to a statutory rulemaking proceeding are presumed valid. *Amax, Inc. v. Colo. Water Quality Control Comm'n,* 790 P.2d 879, 883 (Colo.App.1989). Thus, the burden is upon the challenging party to establish their invalidity by demonstrating that the rulemaking body acted in an unconstitutional manner, exceeded its statutory authority, or otherwise acted in a manner contrary to statutory requirements. *Id.*

Section 12–55.5–104(1)(a), C.R.S.2007, establishes the Director's authority to promulgate rules. It provides:

(1) In addition to all other powers and duties conferred or imposed upon the director by this article or by any other law, the director: (a) *May promulgate rules and regulations* pursuant to the provisions of section 24–4–103, C.R.S., *to govern the registration of outfitters to carry out the purposes of this article* .

(Emphasis added.)

Section 12–55.5–101, C.R.S.2007, sets forth the purposes of the Act. It provides, in relevant part:

It is the intent of the general assembly to promote and encourage residents and non-residents alike to participate in the enjoyment and use of the mountains, rivers, and streams of Colorado and the state's fish and game and, to that end, in the exercise of the police power of this state *for the purpose of safeguarding the health, safety, welfare, and freedom from injury or danger of such residents and nonresidents,* to *register and regulate* those persons who, for compensation, *provide equipment or personal services* to such residents and nonresidents for the purpose of hunting and fishing.

(Emphasis added.)

Based on the statutory grant of authority in section 12–55.5–104(1)(a), the Director promulgated Rule D. 17, which provides:

An outfitter shall not employ or contract with any individual whose outfitter regis-

tration is currently under revocation or active suspension to:

a) provide guide services as defined in section 12–55–102(4), C.R.S.;

b) provide outfitting services as defined in section 12–55.5–102(5.5), C.R.S.;

c) act, behave like, pose as, impersonate, appear or seem to be, or function as a substitute for the outfitter; or

d) represent, stand for, symbolize, serve as the official and authorized delegate or agent for, act as a spokesman for, or act the part or role of the outfitter.

Reading the Director's statutory grant of authority to promulgate rules "to govern the registration of outfitters to carry out the purposes of this article" together with the Act's clearly stated purpose of protecting the health, safety, and welfare of hunters and fishermen by registering and regulating persons who provide equipment and personal services for the purpose of hunting or fishing, I conclude the Director may promulgate rules governing outfitters whose registration has been revoked when engaged in activities falling within the regulatory scope of the Act, namely providing equipment and "personal services" for the purpose of hunting or fishing. *See* §§ 12–55.5–101, –104, C.R.S.2007; *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005) (court must effectuate legislative intent by giving consistent, harmonious, and sensible effect to all parts of a statute).

And, contrary to the majority's view, I do not interpret "personal services" to mean only "outfitting services." The Act contains no such limitation. Moreover, in *Sears v. Romer,* 928 P.2d 745, 751 (Colo.App.1996) *(Sears I),* a division of this court reached the opposite conclusion in holding that "guiding" services, which are statutorily distinct from "outfitting" services, are "personal services" under the Act. Based on this interpretation, the *Sears I* division concluded that the Director had the statutory authority to prevent a revoked outfitter from working as a guide even though no provision of the Act expressly regulated guides.

The majority, however, distinguishes *Sears I* based on the fact that the Act defines the term "guide" and contains a prohibition against revoked outfitters acting as guides. However, I do not find these distinctions compelling because the definition does not grant rulemaking authority and, as I read *Sears I*, the Director's authority to regulate guides derives from its power to regulate those who provide "personal services" for the purpose of hunting or fishing. *See Sears I*, 928 P.2d at 751. Thus, although the *Sears I* division refers to the statutory prohibition as further support, I do not read that reference as a prerequisite to the Director's authority to regulate guides.

Moreover, in my view, *Cartwright v. State Board of Accountancy*, 796 P.2d 51 (Colo. App.1990), relied upon by the majority, does not mandate a different result. In *Cartwright*, the enabling statute gave the accountancy board authority to make rules necessary for the administration of the article. The article regulated financial audits but did not govern financial "reviews," and the article provided that non-accountants were not prohibited from performing services requiring accounting skills if the services did not include investigation, examination, or auditing. A division of this court concluded that the accountancy board exceeded its authority in promulgating rules that prohibited non-accountants from performing reviews. Unlike the enabling statute in *Cartwright*, the enabling statute here expressly provides that it was intended to regulate persons who provide personal services for the purpose of hunting and also expressly gives the Director the authority to promulgate rules to govern the registration of outfitters to carry out that stated purpose. *See* §§ 12–55.5–101, – 104(1)(a).

Accordingly, I conclude that the Director did not exceed her statutory authority in promulgating Rule D.17 to the extent it regulates the activities of revoked outfitters acting as booking agents for registered outfitters. Based on this conclusion, I would not reach the issue addressed in part III of the majority opinion of whether the Director may regulate booking agents under her express statutory authority to regulate outfitters.