2007-NMSC-044

164 P.3d 947

**NEW MEXICO BOARD OF VETERINARY MEDICINE, Appellee–Respondent,**

v.

**Michael H. RIEGGER, D.V.M., Appellant–Petitioner.**

**No. 29,790.**

Supreme Court of New Mexico.

June 28, 2007.

Bannerman & Williams, P.A., Charlotte Lamont, Albuquerque, NM, for Petitioner.

Gary K. King, Attorney General, Jerome Marshak, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

SERNA, Justice.

{1} The New Mexico Board of Veterinary Medicine (the Board) issued a notice of contemplated action against veterinarian Michael Riegger, alleging violations of the Veterinary Practice Act (VPA), NMSA 1978, §§ 61–14–1 to –20 (1967, as amended through 2005). The Board considered the evidence, determined that Riegger violated several provisions of the VPA, Section 61–14–13(A), and ordered Riegger to fulfill several conditions, including payment of $22,021.83 in costs associated with the disciplinary proceeding. According to the Uniform Licensing Act (ULA), "[l]icensees shall bear all costs of disciplinary proceedings unless they are excused by the board from paying all or part of the fees or if they prevail at the hearing." NMSA 1978, § 61–1–4(G) (1993). Riegger appealed several issues to the district court, including the assessment of costs. The court found that Section 61–1–4(G) should be read to permit only those costs anticipated by Rule 1–054 NMRA, which governs the recoverable costs in civil cases before district courts. The Board then ap-pealed to the Court of Appeals, which held that Section 61–1–4(G) "costs" are "not limited by the terms of Rule 1–054(D)." *Bd. of Veterinary Med. v. Riegger*, 2006–NMCA–069, ¶ 1, 139 N.M. 679, 137 P.3d 619.

{2} Riegger petitioned this Court for a writ of certiorari, asking us to reverse the Court of Appeals. While we agree with the Court of Appeals that Rule 1–054 provides only guidance to the assessment of costs under Section 61–1–4(G), we hold that the Board cannot seek reimbursement of expenses associated with the hiring of the hearing officer, the renting of the hearing room, or the Board members' per diem and mileage costs, and reverse the Court of Appeals with respect to these costs. We remand the case to the district court to reconsider the assessment of costs in accordance with this Opinion.

## I. FACTS

{3} On August 9, 1999, Ms. Tea Schiano hired Riegger to provide veterinary care for her horse, Eagle. Riegger suggested Eagle undergo surgery to repair a urethral abnormality. After the October 1, 1999, surgery, Eagle developed myositis (muscle inflammation), and was suffering, unable to stand. Due to Eagle's condition, Riegger recommended that Eagle be euthanized, and Schiano directed Riegger to euthanize Eagle the morning after the surgery. As a result of Eagle's death, Schiano filed a complaint with the Board against Riegger.

{4} The Board issued a notice of contemplated action on August 15, 2001, and an amended notice on July 31, 2002. The amended notice alleged that Riegger committed four violations of the VPA, Section 61–14–13(A). Hearing Officer G.T.S. Khalsa conducted a hearing from September 9 to 13, 2002. Khalsa found Riegger's actions violated only certain provisions of Section 61–14–13(A) and submitted his recommendations to the Board on October 1, 2002.

{5} On November 11, 2002, the Board issued its decision, adopting only some of Khalsa's recommendations. The Board concluded that Riegger violated three subsections of Section 61–14–13(A) and placed Ri-

egger on probation for one year pending fulfillment of five conditions, including payment of disciplinary hearing costs in the amount of $22,021.83. Riegger appealed several issues to the district court pursuant to NMSA 1978, Sections 61–1–17, 39–3–1.1 (1999) (pertaining to appeal of agency decisions), and Rule 1–074 NMRA (same), including the $22,021.83 payment requirement. The district court issued a memorandum opinion and order reversing some of the Board's findings on the alleged VPA violations and remanded Riegger's one-year probation and conditions to the Board in light of its findings. In regard to the disciplinary proceeding costs, the court ordered the Board to provide Riegger with an itemized bill limited to the costs authorized by the local district court version of Rule 1–054.

{6} The Board submitted an itemized list of costs totaling $21,535.91. The costs included hearing transcription costs, the Board's expert witness Dr. Elizabeth Martinez's fees, Hearing Officer Khalsa's fees, and the per diem expenses of the Board members. Riegger contested the transcription, expert witness, hearing officer, and per diem costs as unauthorized by Rule 1–054. The Board responded that Section 61–1–4(G) authorized it to collect "all costs of disciplinary proceedings" from Riegger and provided a new total of $22,210.91 as the cost of Riegger's disciplinary proceeding. The district court issued a December 16, 2004, order, finding the Board's assessment of fees was arbitrary and capricious and contrary to law, and allowed the Board to recover only $1,669.11 worth of costs.

{7} The Board submitted a motion for reconsideration, asking the district court to reconsider its decision regarding costs, and argued that Rule 1–054 did not apply, that Section 61–1–4(G) specifically provides for the recovery of all disciplinary proceeding costs, and that, consequently, the Board's decision was not arbitrary, capricious, or unlawful. In its motion, the Board, for the first time, explained in detail how the costs of Hearing Officer Khalsa, expert witness Dr. Martinez, deposition and hearing transcription, and hearing venue related to the disciplinary proceeding, included various invoices

and bills related to these costs, and submitted a new total of $20,255.17 in disciplinary proceeding costs. In his response, Riegger reiterated that Section 61–1–4(G) costs should be read with Rule 1–054. Riegger averred that the Board should not recover Khalsa's costs because a hearing officer is used at the election of the board, see NMSA 1978, § 61–1–7(A) (1993), and that elective costs should not be passed along to him. Riegger utilized an elective cost argument with regard to the hearing venue and the hearing transcription costs, see NMSA 1978, § 61–1–12 (1981) (giving the Board discretion to record proceedings through transcription or tape recording). Riegger asserted the expert Dr. Martinez's costs could not be recovered because her testimony was cumulative of another expert's testimony, who donated his services to the Board. Riegger also challenged the Board's contention that the Board's per diem and mileage could be recovered because Section 61–14–4(E) requires these costs "be paid exclusively from fees received pursuant to the provisions of the [VPA]." Riegger agreed that he was responsible for the deposition costs for another expert in the amount of $253.95.

{8} The district court issued a memorandum opinion on February 21, 2005. Acknowledging no New Mexico cases have addressed the issue of Section 61–1–4(G) disciplinary proceeding costs, the district court looked to *Gilman v. Nevada State Board of Veterinary Medical Examiners*, 120 Nev. 263, 89 P.3d 1000 (2004), and *In re Wang*, 441 N.W.2d 488 (Minn.1989). Both *Gilman* and *In re Wang* looked to their respective state court rule equivalents of Rule 1–054 for guidance in determining which costs are recoverable in disciplinary proceedings. Relying on these cases, the district court concluded that Section 61–1–4(G) could not be interpreted to mean that Riegger should pay all costs associated with the disciplinary proceeding, but only those costs permitted by Rule 1–054. Regarding Khalsa's costs, the court opined that reimbursement would chill licensees from defending against charges and provide an incentive for a board to find against licensees. The court also cited a constitutional due process problem with re-

imbursement of Khalsa's costs, but stated that it did not need to reach the issue because Rule 1–054 resolved the issue. For the costs of the Board members' per diem and mileage, expert Dr. Martinez, transcription, and hearing venue, the court agreed with Riegger's arguments. The court denied the Board's motion for reconsideration and ordered that Riegger reimburse only $1,923.06 in costs.

{9} The Board petitioned the Court of Appeals for a writ of certiorari concerning the district court's order.[1] *See Riegger*, 2006–NMCA–069, ¶ 9, 139 N.M. 679, 137 P.3d 619. The Court held that Section 61–1–4(G) disciplinary proceeding costs were not limited to the costs included in Rule 1–054 because the plain language of Section 61–1–4(G) is clear; i.e., "a licensee 'shall bear *all costs* of disciplinary proceedings.'" *Id.* ¶ 19 (quoting § 61–1–4(G)). While acknowledging that the district court could look to Rule 1–054 for guidance in reviewing whether the Board's assessment of costs was arbitrary or capricious, *id.* ¶ 22, the Court of Appeals disapproved of the district court's decision to exclude any costs that were not anticipated by Rule 1–054 because the "rule does not govern an award of costs in an administrative disciplinary action under the ULA," *id.* ¶ 19. The Court of Appeals also concluded that *Gilman* and *In re Wang* were not persuasive authority in part because "Section 61–1–4(G) uses mandatory language: a licensee who does not prevail on the merits '*shall* bear *all* costs of disciplinary proceedings.' The costs must be paid unless the Board excuses the licensee from paying or the licensee prevails *and* no other sanction is given." *Id.* ¶ 25 (quoting § 61–1–4(G)). The Court of Appeals also cited *Sears v. Romer*, 928 P.2d 745, 750 (Colo.Ct.App.1996), with approval, a case in which the Colorado Court of Appeals held that Colorado's civil procedure costs statute was not determinative of what costs are recoverable in an agency cost assessment. *See Riegger*, 2006–NMCA–069, ¶ 20, 139 N.M. 679, 137 P.3d 619. The Court of Appeals remanded Riegger's due process argument

for determination by the district court because the lower court explicitly stated it did not reach this issue. *Id.* ¶ 28. The Court then approved the assessment of transcription costs and the Board's per diem expenses because the Board did not act fraudulently, arbitrarily or capriciously; its decision was supported by substantial evidence; and it acted in accordance with law. *See id.* ¶¶ 22, 31–32, 41–44; *see also* § 39–3–1.1(D) (stating the applicable standard of review from an agency decision).

{10} Riegger filed a petition for certiorari with this Court on May 10, 2006, which this Court granted on June 14, 2006. *See Bd. of Veterinary Medicine v. Riegger*, 2006–NMCERT–006, 140 N.M. 226, 141 P.3d 1280. Riegger requests that we determine that Section 61–1–4(G) authorizes the Board to recover only the disciplinary proceeding costs authorized by Rule 1–054. Additionally, Riegger urges the Court to reverse the Court of Appeals' determination that the Board can assess the individual costs associated with the hearing officer, the hearing venue, the Board member's per diem and mileage, the transcription fees of the administrative hearing, and the expert witness. We hold that costs recoverable under Section 61–1–4(G) are not limited to those in Rule 1–054, but that Rule 1–054 provides the Board guidance in assessing costs. Additionally, the transcription costs and expert witness fees are recoverable under Section 61–1–4(G), and we affirm the Court of Appeals on its determination of these costs. However, because reimbursement of the hearing officer's fees and the hearing venue costs violates due process, and the per diem and mileage of the Board members are provided for exclusively by Section 61–14–4(E), we hold these costs are not allowed under Section 61–1–4(G), reverse the Court of Appeals in part, and remand to the district court to reassess costs in accordance with this Opinion.

## II. STANDARD OF REVIEW

{11} In this case of first impression, we must determine what the Legisla-

---

1. The Court of Appeals also held that the Board "cannot sanction its licensees for acts of ordinary negligence arising out of a single episode of care under NMSA 1978, § 61–14–13(A)(5)." *Riegger*, 2006–NMCA–069, ¶ 1, 139 N.M. 679, 137 P.3d 619. This issue was not appealed to this Court, and, therefore, we offer no opinion on this holding.

ture intended "all costs" in Section 61–1–4(G) to mean. Statutory interpretation is a question of law which we review de novo. *Cobb v. State Canvassing Bd.*, 2006–NMSC–034, ¶ 33, 140 N.M. 77, 140 P.3d 498. Our goal in interpreting a statute is to determine and give effect to legislative intent. *Id.* ¶ 34. We do not depart from the plain language of a statute unless we must resolve an ambiguity, correct a mistake or absurdity, or deal with a conflict between different statutory provisions. *Id.* "We will construe the entire statute as a whole so that all the provisions will be considered in relation to one another." *Id.* (quoting *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236).

### III. RULE 1–054 AND OTHER STATUTORY PROVISIONS PROVIDE GUIDANCE IN THE DETERMINATION OF COSTS RECOVERABLE UNDER SECTION 61–1–4(G)

{12} Riegger claims that "all costs" in Section 61–1–4(G) is a term of art that must be read in conjunction with Rule 1–054, which explains which costs are generally recoverable by prevailing parties in civil cases. Riegger concludes that this reading provides uniformity between statutes and alerts licensees to the full potential costs of a disciplinary proceeding. The Board contends that the language in Section 61–1–4(G) is clear as written: "all costs" means all costs associated with the disciplinary proceeding. The Board avers that this does not give the Board unfettered discretion in seeking reimbursement because the district court can review the costs assessment to assure that the Board did not act fraudulently, arbitrarily or capriciously; that the decision was supported by substantial evidence; and that the agency acted in accordance with law. *See* § 39–3–1.1(D). We conclude that Rule 1–054 provides guidance in the determination of which disciplinary proceeding costs licensees shall bear if they do not prevail at a hearing under the ULA.

{13} According to Section 61–1–4(G), "[l]icensees shall bear *all costs* of disciplinary proceedings unless they are excused by the board from paying all or part of the fees or if they prevail at the hearing." (Emphasis added.) The Legislature failed to define "costs" for the purposes of the ULA. Thus, we apply the " 'fundamental rule of statutory construction ... that all provisions of a statute, together with other statutes in pari materia, must be read together to ascertain the legislative intent.' " *Wilson v. Denver*, 1998–NMSC–016, ¶ 36, 125 N.M. 308, 961 P.2d 153 (quoting *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992)). Consequently, we look to other statutory provisions on the same subject matter to discern what "costs" the Legislature intended the Board to recover against a disciplined licensee. As Riegger notes, Rule 1–054(D)(2) lists costs that are generally recoverable in civil cases:

(a) filing fees;

(b) fees for service of summonses, subpoenas, writs and other service of process;

(c) jury fees as provided in Rule 1–038 NMRA;

(d) transcript fees including those for daily transcripts and transcripts of hearings prior or subsequent to trial, when requested or approved by the court;

(e) the cost of a deposition if any part is used at trial or in successful support or defense of a motion for summary judgment pursuant to Rule 1–056 NMRA;

(f) witness mileage or travel fare and per diem expenses, when the witness testifies at trial or at a deposition which is deemed reasonable and necessary, and as limited by Sections 38–6–4(A), 39–2–8, 39–2–9 and 39–2–10 NMSA 1978;

(g) expert witness fees for services as limited by Section 38–6–4(B) NMSA 1978;

(h) translator fees, when the translated document is admitted into evidence;

(i) reasonable expenses involved in the production of exhibits which are admitted into evidence;

(j) official certification fees for documents admitted into evidence; and

(k) interpreter fees for judicial proceedings and depositions.

The Thanatopractice Act,[2] NMSA 1978, Sections 61–32–1 to –31 (1993, as amended through 2005), provides further guidance on the issue as well. Chapter 61, which deals with Professional and Occupational Licenses, contains the Thanatopractice Act and the ULA and VPA, at issue in this appeal. Section 61–32–24(F) provides:

Unless exonerated by the board, persons who have been subjected to formal disciplinary sanctions by the board shall be responsible for the payment of costs of the disciplinary proceedings, which include *costs* for:

(1) court reporters;

(2) transcripts;

(3) certification or notarization;

(4) photocopies;

(5) witness attendance and mileage fees;

(6) postage for mailings required by law;

(7) expert witnesses; and

(8) depositions.

(Emphasis added.) While several other articles in Chapter 61 provide that a disciplined licensee will be responsible for the costs of their disciplinary proceedings only the Thanatopractice Act contains a list of recoverable costs. *See* NMSA 1978, §§ 61–1–3.2(B) (2003) (ULA), –3–28(F) (2003) (Nursing Practice Act), –4–10(D) (2006) (Chiropractic Physician Practice Act), –5A–21(C) (2003) (Dental Health Care Act), –12C–24(E) (1999) (Massage Therapy Practice Act), –14A–17(D) (1997) (Acupuncture and Oriental Medicine Practice Act), –15–12(F) (1999) (Architectural Act), –24C–12(F) (2007) (Interior Designers Act), –28B–20(D) (2007) (1999 Public Accountancy Act), –29–17.2 (2001) (Real Estate Brokers and Salespersons), –30–22(C) (2003) (Real Estate Appraisers Act). Therefore, Section 61–32–24(F) of the Thanatopractice Act provides guidance to all professional boards imposing disciplinary proceeding costs as provided for by Section 61–1–4(G) of the ULA.

{14} This Court took similar steps in a different case, looking to other statutory provisions when the Legislature failed to define

residency for the purposes of the venue statute, NMSA 1978, Section 38–3–1(A) (1988). *See Sunwest Bank of Albuquerque, N.M v. Nelson,* 1998–NMSC–012, 125 N.M. 170, 958 P.2d 740. In *Nelson,* a personal representative, Sunwest Bank, filed a complaint for wrongful death against a doctor in Bernalillo County. *Id.* ¶¶ 1–2. The doctor argued that Bernalillo County was not a proper venue because the events took place in Chaves County, he resided in Chaves County, and Sunwest Bank was not a resident of Bernalillo County for purposes of Section 38–3–1(A). *Id.* ¶ 3. We noted that Section 38–3–1(A) did not define residency or state whether national banking associations, such as Sunwest Bank, were to be considered residents for purposes of venue, and thus, turned to other statutes on the subject to determine the Legislature's intent. *Id.* ¶ 14. We concluded that these other statutes did not control our interpretation of Section 38–3–1(A), but were "persuasive evidence that the Legislature view[ed] national banking associations with their principal place of business in this state as residents of New Mexico." *Id.* ¶ 15. In the instant case, the Legislature has not defined costs for purposes of Section 61–1–4(G), but both Rule 1–054 and Section 61–32–24(F) explicitly list recoverable costs. We conclude, much like we did in *Nelson,* that Rule 1–054 and Section 61–32–24(F) are persuasive evidence that these are the types of costs recoverable under Section 61–1–4(G).

{15} The Court of Appeals was unpersuaded that Rule 1–054 applied directly or indirectly to Section 61–1–4(G) because the statute did not explicitly reference the rules of civil procedure. *Riegger,* 2006–NMCA–069, ¶ 20, 139 N.M. 679, 137 P.3d 619 (noting that four other ULA provisions explicitly incorporate the rules of civil procedure). However, failing to read Rule 1–054 in conjunction with Section 61–1–4(G) can lead to absurd results, as explained by Judge Kennedy in his partial dissent. While limited to a discussion of the Board's per diem and mileage expenses, Judge Kennedy warned that an expansive view of "costs" as "expenses" would not "pre-

**2.** The Thanatopractice Act governs the handling and care of the recently deceased in funeral homes and is intended to protect the interests of the survivors and the general public. Section 61–32–2.

vent other ordinary expenses [from] also being ... taxed. Space rental, telephone bills, water bills, and other components of the overhead required to carry on the business of the Board might be broken out and assessed." *Riegger,* 2006–NMCA–069, ¶ 38, 139 N.M. 679, 137 P.3d 619 (Kennedy, J., dissenting in part). In order to prevent this absurdity, we read Section 61–1–4(G) together with Rule 1–054 and Section 61–32–24(F).

{16} We also point to the inconsistent positions the Court of Appeals took with respect to Rule 1–054. While holding that Rule 1–054 did not apply directly or indirectly to this case, the Court acknowledged that Rule 1–054 can provide the district court guidance when "reviewing an agency's cost assessment to determine whether the agency acted fraudulently, arbitrarily or capriciously, without substantial evidence, or contrary to law." *Riegger,* 2006–NMCA–069, ¶ 22, 139 N.M. 679, 137 P.3d 619 (internal quotations omitted). To clarify this apparent ambiguity, we hold that Rule 1–054 and Section 61–32–24(F) provide guidance to the Board when considering a cost assessment, but that neither is an exhaustive list of the types of costs assessable to the disciplined licensee. Rather, we presume that licensees disciplined under the ULA will be responsible for costs included in Rule 1–054 and Section 61–32–24(F). Any cost not included in either provision, as stated by the Court of Appeals in *Riegger,* is to be reviewed to determine if the Board acted fraudulently, arbitrarily or capriciously; if assessment of the cost is not supported by substantial evidence; or if the Board did not act in accordance with law. 2006–NMCA–069, ¶ 22, 139 N.M. 679, 137 P.3d 619; *see* § 39–3–1.1(D).

{17} We also advise administrative boards to develop a record of costs during or at the conclusion of disciplinary proceedings. In this case, from November 22, 2002, to December 16, 2004, the Board provided four different totals of disciplinary proceeding costs to be paid by Riegger: $22,021.83, $21,535.91, $22,210.91, and $20,255.17, respectively. Additionally, the Board did not explain how the costs related to Riegger's disciplinary proceeding until it submitted a motion for reconsideration to the district court. Under these facts, we agree with the district court that the Board's assessment of costs was arbitrary and capricious and contrary to law until the Board submitted its motion for reconsideration. Had the Board provided this information during Riegger's proceeding, the Board might have been able to avoid this challenge to its cost assessment.

{18} Our holding, that Rule 1–054 and Section 61–32–24(F) provide guidance in the assessment of costs under Section 61–1–4(G), is supported by cases from other jurisdictions. In *In re Wang,* a Minnesota administrative board suspended a doctor's license, but stayed the suspension after sixty days on the condition that the doctor fulfill certain requirements, including payment of $35,000 worth of costs associated with a disciplinary proceeding. 441 N.W.2d at 491–92. The Minnesota Supreme Court determined that the cost assessment should be limited to those expenses that are recoverable by a prevailing party in civil litigation. *Id.* at 497. In *Gilman,* the Nevada Supreme Court reviewed a case similar to the instant case, in which a disciplined veterinarian challenged the imposition of costs and attorney fees. 89 P.3d at 1003, 1005–07. The court permitted a number of costs and determined its rule of civil procedure governing recoverable costs provided guidance as to which costs are recoverable in an administrative proceeding. *Id.* at 1004–07.

{19} The Court of Appeals distinguished *In re Wang* and *Gilman* and relied instead on the Colorado Court of Appeals case of *Sears v. Romer,* 928 P.2d 745. *Riegger,* 2006–NMCA–069, ¶¶ 22–26, 139 N.M. 679, 137 P.3d 619. However, for the purposes of our conclusion that Rule 1–054 and Section 61–32–24(F) provide only guidance to the costs recoverable under Section 61–1–4(G), we do not view these cases as inconsistent. In *Sears,* the court stated that costs imposed in a civil proceeding were "not determinative" in an administrative proceeding. 928 P.2d at 750. In *In re Wang,* the court limited costs to those recoverable in civil litigation, *see* 441 N.W.2d at 497, and the *Gilman* court noted that its rule of civil procedure was illustrative, 89 P.3d at 1006 (stating that the Nevada rule of civil proce-

dure "provides guidance for the recovery of costs, regardless of whether the parties are in district court or before an administrative board"). None of these cases stand for the proposition that other rules and statutes cannot provide guidance when interpreting the meaning of costs recoverable from a disciplined licensee.

{20} In conclusion, to the extent that the Court of Appeals concluded that Rule 1–054 plays no indirect role in determining costs, we reverse. To the contrary, Rule 1–054 and Section 61–32–24(F) provide guidance to New Mexico's administrative boards operating under ULA provisions and our district courts, and they should presume that any costs listed in Rule 1–054 and Section 61–32–24(F) are costs which may be assessed to disciplined licensees. Costs not included in the provisions should be reviewed to determine whether the board acted fraudulently, arbitrarily or capriciously; whether the cost assessment was not supported by substantial evidence; or whether the board did not act in accordance with law. *See* § 39–3–1.1(D). We now turn to the individual costs the Board assessed to Riegger.

## IV. COSTS RECOVERABLE UNDER SECTION 61–1–4(G)

### A. HEARING TRANSCRIPTION COSTS

■ {21} Riegger averred that the Board erred in requiring repayment of the transcription costs of the hearing before Hearing Officer Khalsa. Riegger claims that the Board opted to employ a stenographer instead of making a tape recording of the proceedings, and that he should not be responsible for costs the Board elected to incur. The Board contends that Section 61–1–12 authorizes it to make a stenographic transcript and thus is a recoverable cost. We agree with the Board that the transcription costs are recoverable.

{22} Section 61–1–12 states, "[t]he [hearing] record shall be preserved by any stenographic method in use in the district courts of this state, or in the discretion of the board, by tape recording." The Legislature has clearly stated that a stenographic record will be made, and gives the Board the discretion

to choose to tape record the proceedings instead. *See* NMSA 1978, § 12–2A–4(A) (1997) ("'Shall' . . . express[es] a duty, obligation, requirement or condition precedent."). Additionally, Rule 1–054(D)(2)(d) and Section 61–32–24(F)(2) explicitly permit the Board to recover transcription costs. Consequently, on remand, the district court should presume that the Board can assess these transcription costs against Riegger.

### B. EXPERT WITNESS COSTS

■ {23} The Board assessed the cost associated with its expert witness, Dr. Elizabeth Martinez, to Riegger. The district court ruled this cost was not authorized by Rule 1–054(D)(2) because it viewed Dr. Martinez's testimony as cumulative of another expert witness who volunteered his services to the Board. *Riegger*, 2006–NMCA–069, ¶ 27, 139 N.M. 679, 137 P.3d 619. Riegger urges this Court to adopt the district court's reasoning. The Board claims that Dr. Martinez was its primary witness, her testimony was not cumulative, and, therefore, her costs should be recoverable under Rule 1–054(D)(2)(g). We agree with the Board that Dr. Martinez's testimony was not cumulative and, as a result, we assume assessment of her costs is permissible.

{24} We begin by looking to Rule 1–054(D)(2)(g) and Section 61–32–24(F)(7), which both permit recovery of expert witness costs. Rule 1–054(D)(2)(g) references a different statute, which states: "The expert witness fee which may be allowed by the court shall be limited to one expert regarding liability and one expert regarding damages unless the court finds that additional expert testimony was reasonably necessary to the prevailing party and the expert testimony was not cumulative." NMSA 1978, § 38–6–4(B) (1983). In this case, the Board had two witnesses, but only sought recovery of Dr. Martinez's costs. Under the plain language of Rule 1–054 and Section 61–32–24(F), the Board is entitled to recover the cost of at least one expert witness as the prevailing party, thereby permitting recovery of Dr. Martinez's costs.

{25} The district court found that Dr. Martinez's testimony was cumulative of the

other witness and thus precluded recovery. While the district court ignored the plain language of Rule 1–054, its finding that Dr. Martinez's testimony was cumulative was not supported by the evidence. Dr. Martinez was the Board's only expert to testify before Hearing Officer Khalsa. The Board reviewed the other expert witness's deposition, but only cited the deposition once in its decision. Based on this record, the district court could not find that Dr. Martinez's testimony was cumulative of the other expert witness. Consequently, we remand assessment of this cost to the district court in light of Rule 1–054 and Section 61–32–24(F).

## V. THE BOARD MAY NOT RECOVER THE COSTS OF THE HEARING OFFICER OR HEARING VENUE WITHOUT VIOLATING RIEGGER'S RIGHT TO DUE PROCESS

■ {26} We now turn to costs not explicitly listed in Rule 1–054 or Section 61–32–24(F). The Board sought recovery of Hearing Officer Khalsa's costs and the cost of the hearing room. The district court reversed the Board's finding that the costs were not permitted under Rule 1–054. The court deemed that imposition of the hearing officer's costs would implicate Riegger's due process rights and, quoting *In re Wang*, 441 N.W.2d at 496, stated payment of these costs would "chill[ ] the accused from defending against the charges and provide[ ] an incentive for the Board to find against licensees in order to pass along the Board's expenses." The district court, however, did not address the due process question because it relied on Rule 1–054 instead. The Court of Appeals did not reach this issue either, because the Board did not brief the issue, and determined that the district court should address the issue on remand. *Riegger*, 2006–NMCA–069, ¶ 28, 139 N.M. 679, 137 P.3d 619. Riegger and the Board both request that this Court address the due process question, and we hold that the Board may not recover the hearing officer and hearing venue costs from Riegger without violating his due process rights.

■ {27} We review questions of constitutional law and constitutional rights, such as due process protections, de novo. *State v. DeGraff*, 2006–NMSC–011, ¶ 6, 139 N.M. 211, 131 P.3d 61 (citing *State v. Javier M.*, 2001–NMSC–030, ¶ 17, 131 N.M. 1, 33 P.3d 1). "The Fourteenth Amendment protects citizens from deprivations of liberty and property without due process of law." *Mills v. State Bd. of Psychologist Exam'rs*, 1997–NMSC–028, ¶ 14, 123 N.M. 421, 941 P.2d 502; *see also Reid v. Bd. of Exam'rs in Optometry*, 92 N.M. 414, 415–16, 589 P.2d 198, 199–200 (1979) (applying procedural due process protections to state proceedings). We have previously recognized that licenses constitute a protected property interest. *Mills*, 1997–NMSC–028, ¶ 14, 123 N.M. 421, 941 P.2d 502. Procedural due process requires a fair and impartial hearing before a trier of fact who is "disinterested and free from any form of bias or predisposition regarding the outcome of the case." *Reid*, 92 N.M. at 416, 589 P.2d at 200.

> The inquiry is not whether the Board members are actually biased or prejudiced, but whether, in the natural course of events, there is an indication of a possible temptation to an average [person] sitting as a judge to try the case with bias for or against any issue presented to him [or her].

*Id.* Furthermore, these due process protections apply to administrative proceedings. *Id.*

{28} In this case, Riegger contends that the Board, sitting as prosecutor and finder of fact, has an incentive to sanction every veterinarian in order to recover disciplinary hearing costs. The Board states that on remand, it has evidence to show that the costs assessed against Riegger are substantially less than its reserves, and that this overcomes any appearance of bias. In spite of the Board's claims, we hold that imposition of the costs of the hearing officer and the hearing venue violate due process because both relate directly to a fair and impartial hearing.[3]

---

**3.** Riegger urged the Court to apply this procedural due process argument to resolve the applicability of Rule 1–054 to Section 61–1–4(G). Our

holding that Rule 1–054 provides guidance but is not conclusive of costs recoverable under Section 61–1–4(G), however, is based on statutory inter-

{29} Because the procedural due process concerns in administrative proceedings are the same as those in civil cases, we turn to the statutes that provide funding for our district courts. NMSA 1978, Section 34–6–35(A) (1977), indicates that "[a]ll money for the operation and maintenance of the district courts, including the children's and family court divisions, shall be paid by the state treasurer." This is done, in part, to insure that a defendant will receive the due process protection of an impartial and fair tribunal. Indeed, a non-prevailing party is not typically assessed "the *pro rata* costs of maintaining the courthouse building, its staff, and the judge's salary . . . . because a smooth-running and accessible judicial system is an integral part of our society from which everyone benefits." *Sears,* 928 P.2d at 752–53 (Rothenberg, J., concurring in part and dissenting in part) (internal citation omitted). The Board does not receive compensation for performing its duties in administrating the VPA. *See* § 61–14–4(E). Under the ULA, the Board may conduct the disciplinary proceeding itself or designate a hearing officer to conduct the proceeding. Section 61–1–7(A). Therefore, the only "trier of fact" who could be compensated for his or her work is the hearing officer.

{30} No party has alleged that Hearing Officer Khalsa was biased against Riegger, and our review of the record demonstrates that Khalsa was unbiased. However, we must determine whether there is "an indication of a possible temptation to an average [person] sitting as a judge to try the case with bias for or against any issue presented to him [or her]." *Reid,* 92 N.M. at 416, 589 P.2d at 200. There is a possibility that future licensees subject to disciplinary proceedings may objectively believe that hearing officers will be biased in order to be fully-compensated for their services. The Board urges us to apply a " 'presumption of honesty and integrity in those serving as [administrative] adjudicators.' " *See Jones v. State Racing Comm'n,* 100 N.M. 434, 437, 671 P.2d 1145, 1148 (1983) (quoting *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43

L.Ed.2d 712 (1975)). However, in this case, the due process concerns and the State's interest in providing a smooth-running and accessible hearing process trump this presumption.

{31} Furthermore, we assume the hearing officer and hearing venue costs in administrative proceedings are to be treated like attorney fees in civil proceedings. "Generally, absent statutory or other authority, each party is responsible for their own attorney fees." *ACLU v. City of Albuquerque,* 1999–NMSC–044, ¶ 26, 128 N.M. 315, 992 P.2d 866. Therefore, until the Legislature explicitly directs that licensees disciplined under the ULA should be responsible for the costs of a hearing examiner and hearing venue, we decline to read these costs into Section 61–1–4(G).

{32} As a result, the Board cannot recover the costs associated with the hearing officer or hearing venue without violating due process protections. On remand, the district court may not assess these costs to Riegger.

## VI. THE BOARD'S PER DIEM AND MILEAGE COSTS ARE NOT ASSESSABLE TO RIEGGER BECAUSE THESE COSTS ARE PROVIDED FOR EXCLUSIVELY BY SECTION 61–14–4(E)

{33} The Board required Riegger to reimburse its members for per diem and mileage costs associated with his hearing. Riegger argues this is improper under the VPA, Section 61–14–4(E), which states that "[m]embers of the board shall receive per diem and mileage as provided in the Per Diem and Mileage Act . . . . This reimbursement . . . shall be paid exclusively from fees received pursuant to provisions of the [VPA]." Because the Board's per diem and mileage must come exclusively from fees paid by its licensees, Riegger claims reimbursement is improper. The Board asserts that Section 61–14–4(E) does not directly apply because disciplinary proceedings are unanticipated meetings more appropriately charged

pretation of the statute. Therefore we restrict discussion of this argument to the issues of the

hearing officer and hearing venue costs.

to the disciplined licensee. The Court of Appeals issued a split opinion on the issue, and ultimately permitted recovery of the Board members' per diem and mileage costs. *Riegger*, 2006–NMCA–069, ¶¶ 41, 44, 139 N.M. 679, 137 P.3d 619. The language of Section 61–14–4(E) is clear that the Board may be reimbursed only from fees received pursuant to the VPA, and, therefore, we hold that the Board may not assess its members' per diem and mileage costs to Riegger.

{34} In his partial dissent, Judge Kennedy noted that Section 61–14–4(E) explicitly provides that the Board shall receive per diem and mileage paid exclusively from fees paid by its licensed veterinarians. *Riegger*, 2006–NMCA–069, ¶ 35, 139 N.M. 679, 137 P.3d 619 (Kennedy, J., dissenting in part). He further explained that "[d]isciplinary proceedings are part of the regular, ordinary business of the Board, just as going to court is for judges and court reporters." *Id.* ¶ 37. Indeed, Section 61–14–5(D) charges the Board with "conduct[ing] investigations necessary to determine violations of the [VPA] and discipline persons found in violation." (Citation omitted.) We also agree with Judge Kennedy's reasoning that

> [b]ecause the Board's functions are funded by fees defined by statute, turning "costs" into "fees" under the ULA should not control the more specific provisions of VPA Section 61–14–5(C) that authorizes only license and permit fees, and Section 61–14–4(E) that says Board members pursuing their duties are paid per diem from those fees received from all licensees.

*Riegger*, 2006–NMCA–069, ¶ 37, 139 N.M. 679, 137 P.3d 619. While the majority read the "fees" in Section 61–14–4(E) as designated "costs" under Section 61–1–4(G), *see id.* ¶ 43, this reasoning ignores the plain wording of Section 61–14–4(E). Therefore, we hold the Board's per diem and mileage costs cannot be assessed to Riegger, reverse the Court of Appeals, and affirm the district court.

## VII. CONCLUSION

{35} Riegger urges that "costs" assessed to disciplined licensees under the ULA, Section 61–1–4(G), should be limited to the costs recoverable in civil litigation under Rule 1–054. While we conclude that Rule 1–054 and Section 61–32–24(F) provide guidance to the Board in assessing costs, these provisions are not determinative of Section 61–1–4(G) costs recoverable from disciplined licensees. Costs listed in Rule 1–054 and Section 61–32–24(F) are presumed assessable to Riegger, and other costs are to reviewed under the standard set forth in Section 39–3–1.1(D). Consequently, the transcription and expert witness costs are assessable costs under Section 61–1–4(G). However, the Board cannot recover the hearing officer and hearing venue costs because this would violate Riegger's due process rights. The Board members' per diem and mileage is provided for exclusively by Section 61–14–4(E), and consequently, cannot be assessed to Riegger. As a result, we affirm in part and reverse in part the Court of Appeals, and remand to the district court for reassessment of costs in accordance with this Opinion.

{36} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PAMELA B. MINZNER, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.