VIGIL, Chief Justice (dissenting). {44} I believe that pharmacists who dispense prescription drugs to Medicaid recipients must be paid under the formula set forth in NMSA 1978, Section 27-2-16(B) (1984), regardless of whether they are paid on a fee-for-service basis or by an MCO. Because the majority holds otherwise, I respectfully dissent. The majority holds that Section 27-2-16(B) does not apply to managed care for two reasons: first, because managed care was implemented after the passage of Section 27-2-16(B), and second, because payment of the dispensing fee to pharmacists conflicts with the underlying principles of controlling health care costs via the managed care system. I disagree, and I would hold that Section 27-2-16(B) must apply to MCOs for two reasons. First, because such a holding would be consistent with the plain language of the statute, and second because it is consistent with the principles of the Public Assistance Act. A. The Legislature Intended Section 27-2-16(B) to Apply to Managed Care {45} In order to determine whether Section 27-2-16(B) applies to the managed care system, we must determine what the Legislature intended when it used the words it chose in the statute. To do this, we apply traditional rules of statutory construction. “[I]t is part of the essence of judicial responsibility to search for and effectuate the legislative intent — the purpose or object — underlying the statute.” State ex rel. Heltnan v. Gallegos, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. “In interpreting a statute, the Court’s primary goal is to ascertain and give effect to the intent of the legislature.” Diamond v. Diamond, 2012-NMSC-022, ¶ 25, 283 P.3d 260 (internal quotation marks and citation omitted). {46} To glean the Legislature’s intent, we consider the plain language used in the statute. “[W]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended.” Id. (internal quotation marks and citation omitted). “The first and most obvious guide to statutory interpretation is the wording of the statutes themselves.” Truong v. Allstate Ins. Co., 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted). In fact, “the Legislature has mandated that [t]he text of a statute or rule is the primary, essential source of its meaning.” Id. (alteration in original) (quoting NMSA 1978, § 12-2A-19 (1997)). “New Mexico courts have long honored this statutory command through application of the plain meaning rule, recognizing that [w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation.” Truong, 2010-NMSC-009, ¶ 37 (alteration in original) (internal quotation marks omitted). {47} Section 27-2-16(B) reads: “If drug product selection is permitted by Section 26-3-3 NMSA 1978, reimbursement by the medicaid program shall be limited to the wholesale cost of the lesser expensive therapeutic equivalent drug generally available ■ in New Mexico plus a reasonable dispensing fee of at least three dollars sixty-five cents ($3.65).” Section 27-2-16(B). {48} The central question in this case is what the Legislature intended by its use of the words “medicaid program” in Section 27-2-16(B). Did it intend for the managed care system to be a part of the State’s overall Medicaid program, as those words are used in Section 27-2-16(B)? In my view, it did for two reasons. First, the Legislature used the broad terms “medicaid program” in Section 27-2-16(B). Thus, it meant for the statute to apply to both the fee-for-service and managed care systems, which comprise the State’s overall Medicaid program. Second, after managed care was implemented, the Legislature declined to amend this particular statute to limit its application only to the fee-for-service system, as it had done with other statutes. This should not be ignored in our quest to determine the Legislature’s intent. {49} The majority notes that “Section 27-2-16(B) does not explicitly provide that it is applicable to the managed care system, a system that did not exist when the statute was enacted.” Maj. Op. ¶ 21. This interpretation misconstrues the managed care system as a system distinct and apart from the Medicaid program, which it is not. “‘[M]edicaid’ means the joint federal-state health coverage program pursuant to Title 19 or Title 21 of the federal act.” NMSA 1978, Section 27-2-12.13(D)(7). “‘[M]anaged care system’ refers to the program for [MJedicaid recipients required by Section 27-2-12.6 NMSA 1978.” Section 27-2-12.13(D)(6). The managed care system is part of the Medicaid program. See NMSA 1978, § 27-2-12.6(A) (“The department shall provide for a statewide, managed care system to provide cost-efficient, preventive, primary and acute care for [MJedicaid recipients ....” (emphasis added)). Because managed care is an integral part of the State’s Medicaid program, where the Public Assistance Act refers broadly to the Medicaid program, such provisions, including Section 27-2-16(B), should apply to managed care. {50} Likewise, the statute does not explicitly refer to either fee-for-service or managed care, but rather, it refers only to the Medicaid program — which as stated, encompasses both fee-for-service and managed care. The majority opinion ignores the use of the broad terms “the medicaid program” in its contemplation of the dispensing fee. The majority construes this language as ambiguous and by doing so interprets the statute beyond its plain meaning. Because the language used by the Legislature is clear, the majority errs in proceeding beyond its plain meaning. “We do not depart from the plain language of a statute unless we must resolve an ambiguity, correct a mistake or absurdity, or deal with a conflict between different statutory provisions.” Bd. of Veterinary Med. v. Riegger, 2007-NMSC-044, ¶ 11, 142 N.M. 248, 164 P.3d 947. Finding no ambiguity in the statute, I believe the majority’s interpretation beyond its plain meaning is erroneous. {51} Further, considering that Section 27-2-16(B) was enacted in 1974[3], prior to the adoption of the managed care system in 1994[4], and the Legislature declined to amend the prior existing statute, it follows inferentially that the Legislature intended its words to remain in effect as written. See Doe v. State ex rel. Governor's Organized Crime Prevention Comm'n, 1992-NMSC-022, ¶ 12, 114 N.M. 78, 835 P.2d 76 (“We presume that the legislature knew about the existing law and did not intend to enact a law inconsistent with any existing law.”). The words “medicaid program” remained in Section 27-2-16(B) when the managed care system was authorized and implemented. Nonetheless, the MCOs urge this Court to read the Legislature’s refusal to amend the statute as ambiguous, and therefore make an exception for the MCOs which simply does not exist. As this Court has previously stated, we will not read language into a statute that does not exist. See Sims v. Sims, 1996-NMSC-078, ¶ 22, 122 N.M. 618, 930 P.2d 153 (“The courts will not add to such a statutory enactment, by judicial decision, words which were omitted by the legislature.” (quoting State ex rel. Miera v. Chavez, 1962-NMSC-097, ¶ 7, 70 N.M. 289, 373 P.2d 533)). {52} The Legislature’s intent that Section 27-2-16(B) apply to MCOs is further demonstrated by the Legislature’s choice to amend other parts of the Public Assistance Act in order to explicitly create exemptions for the managed care system. As Plaintiffs argue, and the Court of Appeals noted, see Starko, 2012-NMCA-053, ¶ 41, the Legislature could, and did, create exemptions for MCOs’ obligations to other types of providers. It declined to create such an exemption to Section 27-2-16(B). {53} For example, NMSA 1978, Section 27-2-12.3, which addresses Medicaid reimbursements for physicians, dentists, optometrists, podiatrists, and psychologists services, and contemplates Section 27-2-16,' was first enacted in 1987[5], before the Legislature adopted the managed care system. In 1987, Section 27-2-12.3 read: The human services department shall establish a rate for the reimbursement of physicians, dentists, optometrists, podiatrists and psychologists for services rendered to medicaid patients that provides equal reimbursement for the same or similar services rendered without respect to the date on which such physician, dentist, optometrist, podiatrist or psychologist entered into practice in New Mexico, the date on which the physician, dentist, optometrist, podiatrist or psychologist entered into an agreement or contract to provide such services or the location in which such services are to be provided in the state. Section 27-2-12.3 (1987). After the Legislature adopted managed care in 1994, it amended[6] Section 27-2-12.3 to read as follows: The human services department shall establish a rate for the reimbursement of physicians, dentists, optometrists, podiatrists and psychologists for services rendered to medicaid patients . . . provided, however, that the requirements of this section shall not apply when the human services department contracts with entities pursuant to Section 27-2-12.6 NMSA 1978 to negotiate a rate for the reimbursement for services rendered to medicaid patients in the medicaid managed care system. Section 27-2-12.3 (emphasis added). This exemplifies precisely the manner in which the Legislature could have, but chose not to exempt MCOs from their obligation to pay pharmacists the dispensing fee prescribed by Section 27-2-16(B). {54} Likewise, the statutory scheme includes a section that specifically limits its application to the fee-for-service system. NMSA 1978, Section 27-2-12.8 establishes standard reimbursement payments for mammograms. It was first enacted[7] in 1997, after the Legislature adopted the managed care system, and states: In providing coverage for mammograms under the medicaid program, the department shall ensure that. . . any fee for service payment that shall be made on behalf of the medicaid program for a mammogram of a medicaid recipient shall be consistent with and not exceed the usual and customary charge that reflects the reasonable fair market value of the cost of a mammogram. Section 27-2-12.8 (emphasis added). This also demonstrates the manner in which the Legislature could have limited the mandatory reimbursement to pharmacists of the dispensing fee to the fee-for-service system only, but chose not to. Although the Legislature had amended other sections of the Public Assistance Act in order to create the exemption sought in this case, it declined to do so. Instead it allowed the statute to continue to remain unchanged to apply to the Medicaid program as a whole. {55} The Court of Appeals noted, “[t]he Legislature twice rejected amendments that specifically would have either lowered payments or required periodic renegotiation. See H.B. 400, 45th Leg., 2d Sess. (N.M. 2002) (not passed); S.B. 183, 46th Leg., 2d Sess. (N.M. 2004) (not passed).” Starko, 2012-NMCA-053, ¶ 30. The proposed amendment, which would have created separate reimbursement requirements for the fee-for-service and the managed care systems, would have replaced Subsection (B) of Section 27-2-16 with the following language: Reimbursement by the human services department to pharmaceutical providers participating in the medicaid fee-for-service program shall be determined by the human services department as provided by applicable state and federal law, including regulations adopted by the human services department. Reimbursement by organizations with a contract with the human services department to provide medicaid services to their respective pharmaceutical providers shall be determined by negotiation between such organizations and such providers, or their representatives. S.B. 183, 46th Leg., 2d Sess. (N.M. 2004) (not passed). This proposed amendment to Section 27-l-16(B) illustrates not only that the Legislature considered permitting MCOs to determine pharmacists’ reimbursement rates by contract and declined 'to do so, but also that if the Legislature wanted to create such an exemption, it was aware of exactly how to do so. Because the Legislature did not limit the application of Section 27-2-16(B) to only fee-for-service, but rather left “the medicaid program” language intact with no limitation or exemption, it intended the statute to remain applicable to MCOs. It twice considered making such an amendment and twice declined to do so. This Court has previously recognized the significance of failed legislation in determining legislative intent. See Hartford Ins. Co. v. Cline, 2006-NMSC-033, ¶ 10, 140 N.M. 16, 139 P.3d 176 (concluding that the legislature did not intend to recognize domestic partners as “family members” in the context of automobile insurance coverage). {56} The majority dismisses the Legislature’s refusal to amend Section 27-2-16(B) as ambiguous. See Maj. Op. ¶ 21. This is not ambiguous. By declining to amend the statute at least twice, our lawmakers revealed their intention quite clearly not to remove Section 27-2-16(B) from the managed care system. The majority dismisses the Legislature’s deliberate consideration and refusal to amend an indication that it really intended to amend the statute by implication. “[Ajmendments by implication are not favored.” Johnston v. Bd. of Ed. of Portales Mun. Sch. Dist. No. 1, Roosevelt Cnty., 1958-NMSC-141, ¶ 36, 65 N.M. 147, 333 P.2d 1051. {57} When the Legislature intended a particular provision to apply to either fee-for-service or managed care, but not both, it said so. See, e.g., Section 27-2-12.8. When it did not mean for a particular provision to apply, it amended the statute to eliminate the implication of such broad and inclusive terms. See, e.g., Section 27-2-12.3. Then, when it considered amending Section 27-2-16(B) to carve out the very exemption that the MCOs ask this Court to do here, it voted not to do so. By keeping the broad terms “medicaid program” in Section 27-2-16(B), the Legislature intended to require that pharmacists receive the dispensing fee, whether paid by HSD or MCOs, even in the advent of managed care. In sum, when the words “medicaid program” are read in conjunction with other provisions of the Public Assistance Act, the interpretation that Section 27-2-16(B) should apply to both fee-for-service and managed care becomes even more certain. B. The Application of Section 27-2-16(B) Supports the Policy Behind the Managed Care System {58} I agree with the majority that the Legislature’s intent in authorizing and adopting a managed care system was to reduce the growth in Medicaid costs. See Maj. Op. ¶ 23 (“[SJtates moved to the new model to get away from the fixed rate impo.sed by the fee-for-services model, in an attempt to scale back the costs to states associated with the Medicaid program.”). However, this was not the only basis for the enactment of the new system and because this cost savings to the State is not thwarted by applying Section 27-2-16(B) to managed care, I disagree with the majority. {59} The majority accepts the MCOs’ contention that by imposing the statutory reimbursement rate on prescriptions, the “sought after savings due to managed care would not materialize.” Maj. Op. ¶ 31. The majority reasons that “where lowering cost is a substantial concern, creating a new system but importing the old cost model is antithetical to the goals contemplated by the new system,” and “this cannot have been the Legislature’s intent.” Maj. Op. ¶ 40. It concludes that “[i]n creating the managed care system, New Mexico attempted to implement a strategy to insulate the public coffers from variable expenditures associated with the medical assistance programs and shift the risk of loss.” Maj. Op. ¶ 41. {60} The majority discusses costs savings in general, but where it states that applying the statute to MCOs as being antithetical to the Legislature’s intent, it conflates two concepts: cost savings to the State and cost savings to the MCOs. The former is the policy objective that supported the shift to a managed care system, and that goal was achieved when the shift took place. The managed care system, as the majority acknowledges, allows the State to have cost certainty by paying the MCOs a single rate per Medicaid recipient. That goal is achieved by virtue of the very existence of the managed care system. {61} In order to effectuate the cost savings goal of managed care, HSD enters into capitated risk contracts with MCOs. See 8.305.11.9(A) NMAC (07/01/2001) (repealed and recodified at 8.308.20.9 NMAC) (“HSD shall make actuarially sound payments under capitated risk contracts to the designated MCO[].”). These contracts set a capitated per-person rate, which HSD pays to MCOs, and the rate includes payment for both the services to be provided to the recipient and the administrative costs of delivering the services. See 8.305.11.9(B) NMAC (“HSD shall pay a capitated amount to the MCO[] for the provision of the managed care benefit package at specified rates____The MCO [] shall accept the capitation rate paid each month by HSD as payment in full for all services to be provided pursuant to the agreement, including all administrative costs associated therewith.”) In turn, MCOs are responsible for delivering all services offered by the Medicaid program; they cannot pick and choose which services to offer. See 8.305.11.9(A) (“The MCO[] shall be responsible for the provision of services for members during the month of capitation.”); and 8.305.11.9(B)NMAC (“TheMCOf] does not have the option of deleting benefits from the medicaid defined benefit package.”). Perhaps most important to the cost savings function of the managed care system is that MCOs bear the risk of loss should the cost of services exceed the capitated rate they receive for any particular recipient. See 8.305.11.9(E) NMAC (“The MCO[] is at risk of incurring losses if its costs of providing the managed care medicaid benefit package exceed its capitation payment. HSD shall not provide retroactive payment adjustments to the MCO [] to reflect the actual cost of services furnished by the MCO[].”). {62} The MCOs’ issue with the statute’s dispensing fee mandate rests upon how it affects the cost borne by the MCOs, not the State. In other words, the concern is with the mandated dispensing fee’s impact on the MCOs’ profit margin — the difference between what they are paid by the State for managing Medicaid services and the cost associated with doing so. Where the majority reasons that imposing a fixed statutory cost on the MCOs under the statute is antithetical to the cost savings purpose of the managed care system, it incorrectly identifies by whom the risk of loss is borne. It is borne by the MCOs, not the State. The cost to the State is fixed by virtue of the managed care contracts between the State and the MCOs, and becomes certain at the time the contracts are entered into, not at the time the dispensing fee is paid to the pharmacists. The cost to the MCOs of paying the dispensing fee to pharmacists is the MCOs’ cost of doing business managing Medicaid for the State. That cost is voluntarily assumed by the MCOs at the time they contract with the State. Once that contract is entered into, the risk of loss is shifted from the State to the MCO. Thus, the policy objective to contain Medicaid costs is achieved at the time the contracts between the State and the MCOs are entered into. {63} Additionally, in my view, applying the statutory reimbursement rates to the MCOs also advances the stated goals of the Public Assistance Act to ensure an adequate pool of providers across New Mexico. Reimbursement for dispensing generic medication must be sufficient to ensure that services remain available to all persons in need of such assistance. If a provider’s participation in the State Medicaid program is not economically feasible, then the pool of available providers will shrink. As an HSD official explained, reimbursement of pharmacy services by the Medicaid program is “done in a way so that the pharmacist, a small pharmacist... generally can participate in the program.” By applying the dispensing fee set by Section 27-2-16(B) to MCOs, the Legislature evidences its intent to effectuate this purpose. As the Plaintiffs note, the statutory dispensing fee “is intended to compensate pharmacists serving New Mexico’s Medicaid population at a minimally adequate rate to ensure their competence and professional independence, ensure an adequate network of pharmaceutical providers throughout New Mexico, encourage participation in the Medicaid program, and ensure the Medicaid recipients have a broad choice of providers.” To hold that the dispensing fee does not apply to MCOs is in direct contradiction to these important policy purposes. {64} Finally, as the majority notes, the managed care system was established to address the increasing cost of Medicaid, placing higher burdens on taxpayers. See Maj. Op. ¶ 22. It is counterintuitive to imagine that the Legislature, in an effort to save the State money on Medicaid, would design a statutory scheme which allows the MCOs to forgo payment of the statutorily-prescribed fee — a risk that they voluntarily agreed to assume — while still requiring HSD to pay the same in the fee-for-services system. This scheme would save only the MCOs money — not the State. In my view, this is antithetical to the principle of saving the State money. C. Conclusion {65} The Legislature’s intent is unequivocal — Section 27-2-16(B) applies to both the fee-for-service and managed care systems, which together comprise the State’s Medicaid program. The overall underlying policies supporting the provision of medical care for Medicaid recipients are supported by this interpretation. For these reasons, I respectfully dissent. BARBARA J. VIGIL, Chief Justice 1974 N.M. Laws, ch. 31, § 1. 1994 N.M. Laws, ch. 62, § 22. 1987 N.M. Laws, ch. 269, § 1. 1996 N.M. Laws, ch. 70, § 1. 1997 N.M. Laws, ch. 264, § 1.